James S. Van Pelt, Plaintiff-Appellee, v. Berefco, Inc., an Illinois Corporation (Formerly Known as Berry Refining Company), Bird & Son, Inc., a Massachusetts Corporation, and the Merchants National Bank of Boston, a National Banking Association, Defendants-Appellants.

Gen. No. 49,986.

First District, First Division.

June 21, 1965.

Rehearing denied July 12, 1965.

George W. Windhorst, Jr., James B. Moran, and Barry E. Fink, of Chicago (Bell, Boyd, Lloyd, Haddad & Burns, of counsel), for appellants.

Claude A. Roth, Charles D. Stein, and Noel Kaplan, of Chicago (Gottlieb and Schwartz, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

An action for declaratory judgment was brought by James S. Van Pelt against Berefco, Inc. (formerly known as Berry Refining Company, an Illinois corporation; hereinafter called "old Berry"), Bird & Sons, Inc., and The Merchants National Bank of Boston (presently The New England Merchants National Bank of Boston), seeking a declaration that he was entitled to receive early retirement annuity benefits from a retirement trust of which Merchants was trustee. The case was submitted to the court upon a stipulation of facts, exhibits and briefs.

On June 3, 1964 the trial court entered an order awarding plaintiff his retirement benefits. The court found that defendants deprived plaintiff of his retirement benefits solely because of an alleged breach of section 205.07 of the trust indenture. Finding that section 205.07 was unconscionably broad, without any limit as to time or area, the court declared it null and void and ordered the trustee to pay annuity benefits to

plaintiff to the date of the declaratory judgment and all future benefits without regard to that section, together with costs.

From the stipulation of facts it appears that prior to March 31, 1962, "old Berry" was an Illinois corporation engaged in the production and sale of petroleum products. It maintained a principal office in Chicago, Illinois and operated an oil refinery near Gary, Indiana. It was a wholly-owned subsidiary of Bird & Son, Inc., (hereinafter termed "Bird") which has its principal place of business in Massachusetts and is primarily engaged in the business of manufacturing and selling roofing materials. Plaintiff was an employee of old Berry for approximately 26 years and was president of said company from 1955 until March 27, 1962 in Chicago, Illinois. As president and an employee of old Berry, plaintiff was a participant in the Retirement Plan and Trust established for the benefit of employees of Bird and old Berry.

Parties to the trust indenture were Bird, old Berry, and The Merchants National Bank of Boston (now The New England Merchants National Bank of Boston) as trustee. The Indenture further provided that the name "Berry Refining Company included its successors and assigns."

In or about February 1962, Bird expressed an interest in selling its right in old Berry by contacting certain potential purchasers. Upon hearing of this, Van Pelt telephoned Ralph A. Wilkins, president of Bird in East Walpole, Massachusetts, reminding Wilkins of Van Pelt's desire to have the first opportunity of selling old Berry and of Wilkins' previous expression that Van Pelt would have such an opportunity. Van Pelt was then authorized by Bird to try to sell the company within the next ten days.

Van Pelt, with the aid of the personnel in the Chicago office of old Berry working under his direction,

417

prepared a brochure which included estimates of profits from the refinery operations for periods subsequent to December 31, 1961, and estimates of anticipated production and production yields from the Gary refinery, which estimates Van Pelt and his staff believed were reasonably supported by the books and records of the corporation. Van Pelt thereafter contacted, among others, the Duncans of Oklahoma City who had previously expressed some interest in purchasing old Berry or its assets. The Duncans were and are Walter Duncan and his sons, J. Walter Duncan, Jr., Vincent J. Duncan and Raymond T. Duncan. Van Pelt later presented the brochure to the Duncans and discussed the sale with them in Oklahoma City.

Subsequently plaintiff met with J. Walter Duncan, Jr. in Chicago and made available to Duncan the books and records of old Berry which he might wish to examine. J. Walter Duncan Jr., on behalf of the Duncans, at that time agreed to purchase the assets of old Berry for a price which Bird had previously informed Van Pelt was acceptable to it. J. Walter Duncan, Jr. and Van Pelt discussed the creation of a new corporation which would purchase all the assets of old Berry and thereafter operate the petroleum business. It was plaintiff's understanding that he would be the president of the new corporation and his compensation was discussed. Van Pelt contends that he did not thereafter receive the full compensation then discussed.

Plaintiff, J. Walter Duncan, Jr., Robert A. Mason, Duncan's assistant, and Richard G. Taft, their attorney, went to East Walpole or Boston to meet with Wilkins, president of Bird, and the attorneys for that company. A tentative agreement of sale was reached whereby the new corporation owned by the Duncans, known as Berry Refining Company, a Delaware corporation (hereinafter referred to as "new Berry")

would purchase all the assets of old Berry. Old Berry would change its name to Berefco, Inc., and would cease to be an operating company.

After approval by the various boards of directors, an agreement dated March 23, 1962 was executed on or about April 17, 1962, with a closing date of May 21, 1962, for the transfer of the assets of old Berry to new Berry by duly recorded deeds and assignments in return for cash, secured notes and a promise to pay the balance in cash in May 1962. The agreement provided that the employees of old Berry would become the employees of new Berry. The agreement also related that new Berry was taking over a going business including the obligations of the retirement plan. Plaintiff was made a director and president of new Berry and signed the agreement for the purchase of old Berry as president of new Berry. On March 27, 1962, stockholders of old Berry selected a board of directors making Wilkins president thereof and as of that day plaintiff ceased to be an officer or director of old Berry.

In regard to the retirement plan, old Berry and Bird agreed to take all necessary steps to cause the transfer of the retirement funds held by New England Merchants Bank, as trustee for the benefit of old Berry's employees, including all life insurance carried for the benefit of such employees under existing plans. New Berry agreed to assume all obligations which might accrue after the cutoff date of March 31, 1962, because of the continuation of the retirement plan as to its employees.

On March 31, 1962, old Berry closed its books and new Berry took over the oil business. The quarterly financial statements subsequently received by the Duncans from Bird prior to the date originally intended for the final closing showed lower profit and production levels than did the estimates compiled by

plaintiff. Although the Duncans had an opportunity to examine the books and records of old Berry they claimed that there was a substantial variation between the two groups of figures which constituted a material adverse change in conditions contrary to the representations of the purchase agreement. The Duncans were unable to make the cash payments in May 1962.

After considering alternatives, the parties agreed to extend the installment dates for payment. Old Berry was given a note with interest for the unsecured balance and two positions on the new Berry board with a veto power over expenditures. Provision was made for the buying out of the Duncan interests in the event new Berry could not make its payments. Furthermore, the Duncans were allowed to renegotiate the agreement allowing them to walk away at any time and receive all the money which had been paid in, plus profits or minus losses not to exceed $50,000. These arrangements continued, as extended and modified, to June 1963, the date the case was heard.

Plaintiff was replaced as president of new Berry on July 9, 1962, by J. Walter Duncan, Jr. Robert A. Mason of the Duncan interests assumed the executive direction of the company and plaintiff was named vice president in charge of sales. This position plaintiff claims he never accepted. Plaintiff was dissatisfied with the limitations on his authority and responsibilities and severed his relationship with new Berry on July 23, 1962.

Shortly after leaving new Berry, plaintiff, 55 years of age, with many years experience in the oil business, came to the Chicago area and went back into the oil business as president of Petroleum Company of America. It is conceded that this company, with plaintiff's knowledge and participation, has, since September 1962, and continuing to the date of the hearing below, solicited the sale of and sold petroleum products to

customers of old Berry and new Berry, and who had been such customers while plaintiff was an officer of those companies.

About the time plaintiff was assuming his duties as president of Petroleum Company he applied to old Berry for early retirement annuity benefits under the retirement plan. The plan provided that all benefits were to be paid from the contributions made by the employer to the trust fund; that no contributions were to be made by an employee; that the retirement plan was not to be construed to be part of an employment contract with any employee or to constitute a contract between the employer and the participating employee, and that any beneficiary entitled to any payments should look for payment solely to the trust fund, policies and other funds held by the trustee or to annuity and/or insurance policies held by it or the beneficiary, as the case may be.

The plan further provided that it should be administered by a committee and by a trustee, New England Merchants Bank (formerly the Merchants National Bank) and that the trustee make no disbursements other than for ordinary expenses without the written direction of the members of that committee.

Section 205.07 of the plan provides:

Section 205.07. Waiver of Retirement Benefits in Certain Events.

In the event that any Retiree shall, except after first obtaining written consent of the Employer, engage in or become associated (whether as proprietor, partner, trustee, director, officer, consultant, or employee) with the operation of any business which at the time of his association therewith involves the manufacture and/or sale of *products similar* to those produced by the Employer, he shall be deemed to have waived all retire-

ment income benefits hereunder payable during the period of such association, and, unless he shows to the satisfaction of the Employer that his association with such business was without knowledge of the similarity of products and that he terminated the association promptly upon receiving such knowledge, also to have waived all income benefits payable within two (2) years from the date when such association ceases; and any annuity policy provided for a Retiree shall provide that, in the event of such association by him, the payments which are deemed waived by reason thereof shall be made to the Trustee unless already received by the Retiree, in which case payments to an equal amount thereafter becoming due the Retiree or his beneficiary shall, upon notice to the insurance company, be withheld and paid over to the Trustee. (Emphasis ours.)

After application for retirement benefits by plaintiff, Mason of new Berry informed Bird of plaintiff's violation of section 205.07 of the retirement plan. The plan committee was notified that plaintiff was selling oil products in competition with new Berry, and the committee thereupon advised the trustee in writing of its vote directing the trustee to purchase an annuity for plaintiff, and to instruct the company selling the annuity to pay the benefits back to the trustee so long as plaintiff was ineligible under section 205.07. The trustee acted as directed by the committee. Mason then wrote plaintiff that the trustee had been advised not to pay the retirement benefits.

The committee administering the plan, which determined whether an employee was eligible for benefits, was composed of executives of Bird and appointed by it. Additionally, Bird paid the expenses of the committee. The formal transfer of plan administration had not been accomplished pursuant to the pur-

chase agreement and new Berry had not named a new retirement plan committee. Plaintiff attempted to negotiate the difficulties regarding the retirement benefits with J. Walter Duncan of new Berry and Wilkins and Charles Bird of Bird. On November 5, 1962 Charles Bird suggested that plaintiff confer with Wilkins and Duncan in an attempt to solve the impasse. Plaintiff insisted that he was never employed by new Berry. Rather, he claimed he was always an employee of old Berry and retired from it in July of 1962. Plaintiff went on to claim that old Berry was no longer in the oil business; that he was consequently never in competition with old Berry, and therefore, he had fulfilled the conditions of the retirement plan and was entitled to its benefits.

After a series of discussions, a letter was sent by Duncan to plaintiff in which new Berry offered to remove its objections to benefit payments if plaintiff would recognize that his claim was based on his retirement from new Berry, and with the reservation that new Berry would again object if plaintiff's competition proved detrimental to the company. After he rejected this offer plaintiff brought the instant action against Bird and old Berry as well as the trustee under the plan. Neither new Berry nor the members of the retirement plan committee were named as parties in the declaratory action.

Plaintiff contends that the issue in the instant case is one of retirement trust administration. Plaintiff makes no attempt to support the finding of the trial court that section 205.07 of the retirement trust indenture is void as an unreasonable covenant in restraint of plaintiff's future employment. However, plaintiff does argue that section 205.07 is void, and that he is entitled to retirement benefits because the relevant language of the noncompetition clause—"products similar"—is ambiguous and incapable of being objec-

tively interpreted or administered; and that regardless of the language itself defendants have in fact arbitrarily and discriminatorily administered the plan in such a manner as to cause the forfeiture of his benefits.

Defendants contend that section 205.07 is valid, and that plaintiff, having admittedly become the president of a company selling products to and soliciting customers of his former employers, has violated section 205.07 and is therefore not entitled to benefits under the plan. Defendants further suggest that the complaint fails to state and the proof fails to sustain a cause of action against Bird and old Berry and that new Berry and the members of the retirement benefits committee were necessary and indispensable parties to the declaratory judgment action.

It is agreed that Massachusetts law applies and the relevant Massachusetts decisions which govern the substantive rights of the parties here hold that to the extent that a noncontributory retirement plan is executed objectively and in good faith, its terms govern the rights of the parties to it.

The only question before this court is one of fact as to whether there has been a fair and reasonable determination by the committee administering the plan concerning payments to be made from the fund. Patton v. Babson Statistical Organization, Inc., 259 Mass 424, 156 NE 534 (1927); Clark v. New England Tel. & Tel. Co., 229 Mass 1, 118 NE 348 (1918); Karcz v. Luther Mfg. Co., 338 Mass 313, 155 NE2d 441 (1959); Askinas v. Westinghouse Elec. Corp., 330 Mass 103, 111 NE2d 740 (1953).

To support their divergent positions with respect to the validity and proper application of section 205.07 both parties hereto rely on the Clark and Babson cases.

In Clark, an employer had instituted a plan for the relief, among others, of dependent relatives of employees meeting death by accident occurring in and

due to performance of their work. A committee of employees was created to administer the fund and determine the beneficiaries thereof, its decision by the terms of the plan being final. Plaintiff, father of a deceased employee, brought an action to require that payments be made to him and he recovered at the trial level. The evidence indicated that the plan committee relied on an investigation report in which plaintiff had stated that he was not dependent on the earnings of deceased to support its decision that plaintiff was not eligible for benefits under the plan. In setting aside the verdict for plaintiff the reviewing court applied the principle that the terms of the plan, if executed in good faith, governed the rights of the parties, and that "the method of investigation of claims and general principles followed by the committee in the performance of their duties must be fair and reasonable." The court posed the issue as one of fact as to whether the committee had objectively and in good faith determined the question of plaintiff's dependency. The court held that the committee's reliance on the investigation report was not evidence of bad faith, and rejected plaintiff's assertion that lack of good faith was demonstrated by the committee in failing to notify him to appear before it, and in not giving him a hearing on the claim.

In Babson, plaintiff was hired by defendants at a weekly salary which she received until the time of her discharge. Soon after entering the employment plaintiff was given a booklet describing a profit sharing or deferred wage plan under which "the employees who have been with the . . . [employer] two full calendar years, in addition to their fixed salaries, may receive one or more additional payments." The booklet also stated: "If any question arises as to the interpretation or application of any feature of the plan, the decision of the president shall be final." Upon discharge plain-

tiff was denied any rights under the plan by the president and she thereupon brought a successful action to obtain benefits under the plan.

The court, after finding that a question of fact existed as to whether the plan was administered in good faith, held that the president, by relying on the contract provisions that his decisions on any question were final, could not render the contractual obligations of the plan illusory. Having determined that plaintiff could not be denied her benefits by being discharged and that the president had arbitrarily refused to make payments, the court went on to deny part of plaintiff's claim based upon time she had spent working in an area other than that covered by the plan, regardless of the president's bias and interest in the administration of the plan.

The plan there provided for deferred compensation for work done only for Babson Statistical Organization and not for that of the Babson Institute, and that one-third of her weekly salary had been paid by the Institute. The court held: "The plaintiff is not entitled to recover on the one-third of her salary paid in 1922 by the Babson Institute. To hold otherwise would be contrary to the express terms of the plan."

We find neither of the above cases, nor the facts therein recited, support plaintiff's contentions. The phrase "products similar" in section 205.07 to which plaintiff objects, is no more ambiguous nor difficult to construe objectively than the question of "dependency" in the Clark case. No more certainty would exist if the phrase were changed, as plaintiff suggests, to contain the words "detrimental," "competitive," or "detrimentally competitive." In either case the issue is whether there has, in fact, been an objective and good faith determination by the committee in charge of administering the plan that plaintiff has violated the provisions of section 205.07.

Whether plaintiff has so conducted himself is a question of fact under the holdings of both the Clark and Babson cases and we have been presented with no argument which would render the clause in issue null and void.

We, therefore come to a consideration of the question of good faith interpretation and administration of section 205.07 of the plan by the committee. As conduct illustrative of bad faith, plaintiff asserts that the committee held no hearings, and conducted no independent or unbiased investigation to determine whether plaintiff had violated the non-competition clause. Further, plaintiff alleges that the committee relied on the investigation of J. Walter Duncan, an interested party with whom plaintiff's relations suffered by reason of the revelations of the quarterly report, and that the plan committee which was composed of executives of Bird acted on the basis of orders emanating from Bird. Were the question of plaintiff's breach of section 205.07 in dispute, a different situation would exist than that which is presently before this court for review. It is admitted by stipulation that plaintiff became president of a company which sold to and solicited customers of old and new Berry, conduct which is asserted to be a waiver of benefits under terms of the plan. He does not contend otherwise.

The contributions and distributions of benefits under the retirement plan involved here were made voluntarily according to provisions mutually accepted by defendants and plaintiff. Having admittedly breached the provisions of the plan plaintiff cannot be heard to complain that he is entitled to the benefits thereof, and no question of lack of good faith is presented for our determination as we construe Massachusetts law.

■ Commerce Clearing House Pension Plan Reporter, pars 56, 295 states: "Many plans permit the

427

employer, or the retirement committee in charge of administering the plan, to reduce or terminate benefits in case the employee, after his retirement, engages in any activity which is competitive with or detrimental to the employer's business." The conditional retirement plan provision in the instant case was designed by the employer to protect against competition by former employees who may retire and obtain post-retirement benefits from them while at the same time engage in competitive employment. The employer, as part of a non-contributory plan may provide for such contingencies.

■ There is no restraint here upon plaintiff's right to future employment. He is free to engage in competition with new Berry without restraint or interference by defendants, but he is not free to do so while accepting benefits of the retirement plan to which he contributed nothing. Plaintiff further argues that defendants themselves construed "products similar" to mean "detrimental competition." We find no merit to this contention. The fact that defendants desired to terminate their dispute with plaintiff by offering to reinstate his benefits and object to his conduct in the future only if his activities were considered competitively detrimental is not determinative of any question with regard to the violation of the express terms of section 205.07. If anything, defendants' offer, which plaintiff refused to accept, was evidence of good faith on their part.

■ We further find that plaintiff's complaint for declaratory judgment, under section 57.1 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 57.1), should have been dismissed for failure to join necessary and indispensable parties. A declaratory proceeding is neither equitable nor legal in nature, but is sui generis (Koziol v. Village of Rosemont, 32 Ill App2d 320, 177 NE2d 867 (1961)), and is not intended to be exercised

in the abstract. Section 57.1 of the Practice Act restricts proceedings to "cases of actual controversy" in which the court may "make binding declarations of rights." The section also provides:

> The court shall refuse to enter a declaratory judgment, decree or order, if it appears that the judgment, decree or order would not terminate the controversy, or some part thereof, giving rise to the proceeding.

In the case at bar there is no actual controversy between plaintiff on the one hand and Bird and old Berry on the other. While plaintiff claimed to have retired from old Berry the stipulation affirmatively shows that that was not the case, but that he became president of new Berry and severed his relationship with the latter company on July 23, 1962. It was new Berry which requested that the annuity payments be paid back to the trustees. The plan, moreover, specifically provides that any retiree shall look for payment from the trust fund or its proceeds, not from any other party.

New Berry and the three members of the retirement plan committee are necessary and indispensable parties to the instant proceeding. The employer's required contributions to the plan were actually made by new Berry, which as part of its operations established reserves for such funding. The purchase agreement expressly provided that new Berry would assume the obligations accruing under the retirement plan in relation to benefits claimed by former old Berry employees who became employees of new Berry.

The retirement plan itself provides that the trustee shall make disbursements only upon the direction of the plan committee. It was new Berry which notified the committee that plaintiff was ineligible for benefits

because of his violation of section 205.07. The plan committee then directed the trustee not to disburse benefits to plaintiff but to instruct the annuity company to apply the benefits back to the trust fund.

Both new Berry and the plan committee would be materially affected by any declaration of rights sought by plaintiff, and the order herein entered could in no way terminate the controversy. Old Berry and Bird are not directly involved in the subject matter of the litigation, while new Berry and the committee, which were not made parties, are. The declaration directing the trustee to pay plaintiff is not binding either upon the committee or new Berry. It does not prevent them from seeking to restrain the trustee from making any disbursement by an action in a Massachusetts court of chancery where the general rule is recognized that a judgment, except in a proceeding in rem, is without force save as between the parties to it and their privies, even though such judgment involved precisely the same issues. Standard Acc. Ins. Co. v. Doiron, 170 F2d 206 (1st Cir 1948).

█ Under the circumstances Illinois law does not authorize a declaration of rights as entered below, where plaintiff has named parties with whom he had no actual controversy and had omitted others without whom the controversy could not be terminated. Saline Branch Drain. Dist. v. Urbana-Champaign Sanitary Dist., 399 Ill 189, 77 NE2d 158 (1948).

For the reasons stated the declaratory judgment entered below is reversed.

Reversed.

BURMAN, P. J. and MURPHY, J., concur.