## M. J. Pankey, Appellant, v. Federal Life Insurance Company, Appellee.

### Gen. No. 38,416.

Opinion filed November 4, 1936. Rehearing denied November 27, 1936.

STEBBINS, McKINLEY & PRICE, of Chicago, for appellant; WILLIAM E. McKINLEY and PAUL E. PRICE, of counsel.

ECKERT & PETERSON, of Chicago, for appellee; TOM LEEMING, of Chicago, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

Plaintiff brought suit against defendant in the circuit court of Cook county to recover certain commissions, claimed to be due plaintiff under the terms of a contract entered into between plaintiff and defendant. A jury trial was had, resulting in a verdict for defendant, and judgment was entered against plaintiff for costs. This is an appeal from that judgment.

On October 1, 1929, a contract was entered into between the Federal Life Insurance Company, defendant,

as first party, and M. J. Pankey, plaintiff, as second party, by the terms of which the defendant company employed plaintiff ''as its agent for the purpose of procuring and effecting applications for insurance on the lives of individuals that shall be satisfactory to said company, and performing such other duties in connection therewith as may be required by the said company.'' The contract contains many provisions as to the services to be rendered by plaintiff to defendant company, and as to commissions agreed to be paid to plaintiff on account of such services. Article C of this contract is as follows:

''It is agreed that said second party shall be allowed Ten Renewal Commissions of five per centum (5%) each on all Cash Renewal Premiums paid to the Company in accordance with its rules and requirements, on policies produced by him and his sub-agents, provided the said policies remain so long in force.''

Plaintiff severed his relations with defendant, and defendant in its brief admits that under this clause, if plaintiff had not violated his contract, he would be entitled to certain renewal commissions after the termination of his contract, and that certain of them were paid to him by defendant after such termination. Defendant contends, however, that plaintiff forfeited his right to receive further commissions because of his violation of the terms of the contract upon which such right is based, by switching and attempting to switch policyholders in defendant company to another company. The provision of the contract claimed to have been violated by plaintiff is as follows:

''It is expressly understood and agreed that should the second party withhold any money due the Company as shown by its books, or refuse to turn over to the Company, or its duly authorized representative, any books, papers or property of the Company which may have come into the hands of second party as custodian or otherwise, *or should he switch or attempt to*

*switch any policyholder or agent of the Company, then
and in such event this contract shall immediately termi-
nate without notice and all commissions, accrued or to
accrue hereunder, shall be forfeited to the Company.''*
(Italics ours.)

Prior to the execution of the contract by the
parties, plaintiff received a letter from defendant com-
pany, the terms of which were accepted by plaintiff on
the face thereof, as shown by the document received in
evidence in the trial. It is as follows:

"Chicago, September 20, 1929.

"Mr. M. J. Pankey,
Chicago, Ill.

Re: Renewal Commissions Life Contract
dated October 1st, 1929.

"Dear Mr. Pankey:

"It is understood that the renewal commissions
called for under this contract are to be paid to you in
the event of your resignation, *or the cancellation of this
contract by the company for any reason except cause,*
or to your estate in the event of your death. (Italics
ours.)

"Yours very truly,
"FEDERAL LIFE INSURANCE COMPANY
"George Barmore,
Vice President.

"Accepted M. J. Pankey,
Division Manager."

On March 3, 1932, plaintiff wrote to the defendant as
follows:

"Chicago, March 3, 1932.

"Mr. George Barmore, Vice Pres. & Supt. of Agents,
Federal Life Insurance Company,
Chicago, Ill.

"Dear Mr. Barmore:

"Please accept my resignation in accordance with
the provisions of my contract.

"Yours very truly,
"M. J. Pankey,
M. J. Pankey Agency"

Thereafter on March 4, 1932, plaintiff mailed to defendant the following letter:

"Chicago, March 4, 1932.

"Mr. George Barmore, Vice Pres. & Supt. of Agents,
Federal Life Insurance Company,
Chicago, Ill.

Re: Termination of Contract.

"Dear Mr. Barmore:

"With reference to my letter of March 3rd, terminating my contract with your Company, provided it does not affect my renewals in any way, and as a matter of convenience to you, I would be very glad to consider the severing of my connection as of April 30, 1932, instead of May 3.

"Will you kindly acknowledge receipt of this letter?

"With kindest personal regards, I remain

"Yours very truly,
"M. J. Pankey,
M. J. Pankey Agency"

In reply, plaintiff received the following letter:

"Chicago, March 4, 1932.

"Mr. M. J. Pankey,
Chicago, Ill.

Re: Termination of Contracts.

"Dear Mr. Pankey:

"Acknowledging your two esteemed favors, one of the third inst. and one of the fourth inst.:

"It is agreeable to us that your agency contracts with the Federal terminate as of April 30, 1932.

"We should be glad to keep in touch with you and learn of your success in any connection you may make.

"With kind personal regards, I am

"Cordially yours,
"George Barmore"

On the hearing, defendant was called by plaintiff as a witness under section 60 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 188, for cross-examination. His testimony was substantially as follows: That as an insurance broker, he conducted his business under the name of M. J. Pankey Agency, or

M. J. Pankey & Company; that during the year 1933, one Wesley wrote some insurance business for plaintiff; that plaintiff paid Wesley commissions on insurance written; that Wesley did not attempt to induce or persuade the policyholders in the Federal Life Insurance Company to relinquish their policies of insurance in that company, and that plaintiff did not at any time from the date of the contract between plaintiff and defendant, attempt to persuade policyholders of the defendant company to relinquish their policies and place their insurance with other companies. He testified to the effect that he did not remember whether or not he called on certain persons named Serritella in August, 1933, and persuaded, or attempted to persuade such persons to drop their insurance in the Federal Life Insurance Company, and that to the knowledge of the witness, he did not in the year 1933 or 1934, furnish to Wesley the names of persons who had taken out policies with the Federal Life Insurance Company prior to that time.

A witness named Fred M. Kramer testified to the effect that in the year 1933 he had a policy of insurance in the Federal Life Insurance Company on the life of his son and wife, and that the witness paid the premiums; that in September, 1933, he had a conversation with a Mr. A. J. Wesley regarding insurance; that Wesley called on the witness at his home and exhibited to the witness a card, and that the witness recalled that it was the card of the Pankey Agency, and that Wesley's name was in the corner of the card. The abstract filed here by defendant in the case contains the following statement as to the testimony of this witness: "Here follows testimony by the witness tending to show that the witness Wesley attempted to persuade him to drop his policy in the Federal Life Insurance Company and take one in some other company."

One Irwin S. Maze, a witness produced by defendant, testified to the effect that in the year 1933 he had a conversation with Wesley; that Wesley presented a card as representative of the Pankey Agency, and that Wesley suggested that the witness transfer his policy in the Federal Life Insurance Company to another company.

Margaret A. Binder, a witness offered on behalf of defendant, testified in substance that she had a conversation with Pankey, the plaintiff, early in the spring of 1933 about insurance; that Pankey advised her to withdraw whatever she could get out of the Federal Life Insurance Company, and advised the witness to take out a policy in another company.

Armin Klein, a witness for defendant, testified that in 1933 he had a policy of insurance with the Federal Life Insurance Company; that Wesley came to his house and said that the Federal Life Insurance Company was very low, and that he wanted the witness to put his insurance in another company; that Wesley showed the witness a business card and stated that he represented the Pankey Agency.

One Stefanie A. Klein, a witness produced by defendant, testified to the effect that she was present at a conversation between her husband, Armin Klein, and Wesley in the fall of 1933; that Wesley advised Mr. Klein to drop his Federal Life Insurance policy and take out another.

Alma Birch, a witness for defendant, testified that Pankey, the plaintiff, called on her in October, 1933, at the home of the witness; that at that time, she was a beneficiary under a policy in the Federal Life Insurance Company; that her husband held the policy and paid the premiums; that Pankey told the witness in effect that the Federal Life Insurance Company was going under, and that the witness should turn in the policy and have Pankey write policies with the Con-

tinental Insurance Company. The witness further testified to the effect that her father had a policy in the Federal Life Insurance Company, and that Pankey advised her father to file application for insurance in the Continental Insurance Company, that both her father and husband signed such application, but that no policy was taken out in the Continental by either, to her knowledge.

Ruth Serritella, a witness for the defendant, testified to the effect that she was called upon by a man named Pankey; that in August, 1932, she was a policyholder in the Federal Life Insurance Company, as was also her husband; that Pankey wanted her to switch her policies to another concern, and that she said, "To what company," and he said, "one of several"; that the witness said, "Before we would go any further, we would have to investigate to see the financial standing of the Federal before we switched policies."

Defendant offered in evidence what is recited in the abstract to be a "contract between M. J. Pankey, Anton J. Wesley and the Manhattan Life Insurance Company, by the terms of which, Wesley was employed to procure applications for life insurance and to deliver policies, premium receipts, premium notes and interest receipts upon payment of the amount named therein, when the terms and conditions governing the delivery had been complied with." This contract, as is recited in the abstract, contains other provisions to which we do not deem it necessary to refer.

A perusal of plaintiff's brief leads us to the conclusion that plaintiff does not seriously contend that either by himself or by his agent Wesley, he did not seek to switch policyholders in defendant company from that company to other companies. His claim seems to be that, by reason of the words used in the letter from the company to the plaintiff dated March 4th, 1932, to wit: "It is agreeable to us that your

agency contracts with the Federal terminate as of April 30, 1932,'' the contractual relation between the parties was terminated, and, that, therefore, he is not bound by the provision of the contract with reference to the switching of policies.

Plaintiff cites a number of cases in support of this contention. They are all predicated upon the theory that where an agent has earned commissions which are due him for services rendered at the time of his discharge, by his principal, that such agent may recover such commissions in a proper action. After a careful reading of these cases, we are unable to determine that they have any relevancy to the issues involved here. It is apparent from a reading of the contract and the correspondence between the parties that plaintiff's contract with defendant to solicit insurance business for defendant alone was terminated. Plaintiff bases his right to the commissions sued for upon the contract, and as already stated, it is admitted by defendant that his claim is well founded, unless he forfeited his right to such commissions by a violation of its terms.

In *Chase v. New York Life Ins. Co.*, 188 Mass. 271, Chase, who was employed as an insurance solicitor for the company, was discharged, and thereafter brought suit against the insurance company for renewal commissions based upon a contract in writing, which provided, among other things, the following:

''It is agreed that said party of the second part shall be allowed, under this agreement, the following compensation only, unless otherwise expressly stipulated in writing, namely, a commission on the original or renewal cash premiums, which shall, during his continuance as said agent of said party of the first part, be obtained, collected, paid to and received by said party of the first part up to and including the fifth year of assurance (should his agency continue so long) on

policies of insurance effected with said party of the first part, by or through said party of the second part, which commission shall be at and after the following rates.''

This contract also contained the following provisions:

''It is agreed that the renewal commissions which shall not have accrued at the termination of the agency created by this agreement shall, as they accrue thereafter, be passed to the credit of said party of the second part, if living, and in case of his death to his legal representatives, under the terms of this agreement; provided, however, said agency shall continue for the period of one year from date hereof, and that said agency shall not be terminated by said party of the first part for a violation of this agreement by said party of the second part, and that said party of the second part shall not be engaged in the business of life insurance for any other company, in any capacity whatever, in the State of Massachusetts during the maturity of said renewal commissions.''

Within a short time after the discharge of Chase by the New York Life Insurance Company, he entered into the employment of another insurance company, engaged in the business of life insurance in the State of Massachusetts, and the court in holding that he was not entitled to recover the renewal commissions, said:

''It is obvious at the outset that all the clauses must be considered together, and that the twenty-first clause applies only during the continuance of the plaintiff as agent, for five years. There are many cases which hold that under such a clause, the plaintiff cannot recover after he ceases to act as agent. *Stagg v. Connecticut Ins. Co.*, 10 Wall. 589; *Jacobson v. Connecticut Mut. Ins. Co.*, 61 Minn. 330; *King v. Raleigh*, 100 Mo. App. 1; *Ballard v. Traveller's Ins. Co.*, 119 N. C.

187. Whether, if this clause stood alone, the plaintiff could recover, having been discharged without cause, is a question we need not decide, for it is to be construed in connection with the twenty-fourth article. This article begins with a general agreement as to renewal premiums, but this is subject to three provisos. We may assume that the first two provisos do not stand in the way of the plaintiff's recovery, but the third proviso cuts down the plaintiff's right of recovery to the case of his not being 'engaged in the business of life insurance for any other company, in any capacity whatever, in the State of Massachusetts, during the maturity of said renewal commissions.' "

In the instant case, the jury heard the evidence, and from it apparently concluded, as they were justified in doing, that plaintiff had attempted to switch policyholders from defendant company to other companies. We are constrained to hold that in doing so, he violated his contract and therefore cannot recover. Therefore, it is our conclusion that the judgment should be and it is affirmed.

*Affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.