DOYLE JOHNSON, Plaintiff-Appellant, *v.* COUNTRY LIFE INSURANCE COMPANY, Defendant-Appellee.

(No. 11779; ■■■■■■■■)

Fourth District—May 24, 1973.

*Modified opinion upon denial of rehearing July 20, 1973.*

Ryan and Heller, Ltd., of Mattoon, (Harlan Heller, of counsel,) for appellant.

Dilsaver, Gilkerson & Spitz, of Mattoon, (Joseph R. Spitz and Thomas F. Ryan, of counsel,) for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court upon denial of petition for rehearing:

On January 1, 1970, plaintiff-appellant, Doyle Johnson, and defendant-appellee, Country Life Insurance Company, entered into an agency manager's agreement which provided, in pertinent part, as follows:

"19. TERMINATION OF AGREEMENT. This Agreement shall take effect upon the effective date set forth below, and shall continue in full force and effect until December 31, following such effective date, and from year to year thereafter, except that the same may be terminated by either party hereto at any time upon the giving of thirty (30) days notice in writing to the other party, and shall terminate upon the death of Agency Manager. However, upon termination of this Agreement, all commissions and over-writing provided for herein shall remain and be payable in accordance with the provisions of this Agreement. * * *

23. COMMISSIONS AFTER OTHER TERMINATIONS. In the event Agency Manager ceases to represent Company for reasons other than those covered in Paragraphs 20, 21 and 22 and does not represent any other life insurance company in any capacity or solicit or assist in the sale of life insurance, annuities or health insurance of other companies in this state or in any state or territory in which this Company is authorized to do business, renewal commissions and overwriting on paid-for business shall be paid to Agency Manager as follows: * * *

In the event Agency Manager ceases to represent Company and represents any other life insurance company in any capacity

or solicits or assists in the sale of life insurance, annuities or health insurance of other companies in this state, or in any state or territory in which this Company is authorized to do business, no renewal commissions or overwriting shall be payable, and all rights and interests of Agency Manager shall thereupon cease."

On July 27, 1970, effective *August 21, 1970,* the defendant terminated plaintiff's employment by notice as provided in section 19. Plaintiff brought suit for declaratory judgment alleging section 23 of the agreement to be void and against public policy in that "* * * the same will deprive him of his livelihood and will deprive him of vested renewals which he has earned" and that in the event he is employed in the insurance field in the State of Illinois or in any State or territory in which defendant is authorized to do business, he will forfeit all renewals previously earned. The trial judge found the agreement to be a valid, binding contract, not in restraint of trade nor contrary to public policy. He also found that section 23 of the agreement did not deprive plaintiff of the right to be gainfully employed. Plaintiff appeals from that judgment.

Plaintiff Johnson testified in his own behalf and the following is a summary of his testimony. He had not engaged in the business of selling life and health insurance for any company other than defendant since the execution of the agreement in question. He had been with the company since 1949, and had been an agency manager in Coles County, selling life insurance for defendant since April 1, 1952. Johnson further testified that he had never sold insurance in any State other than Illinois, nor in any county other than Coles since 1952. It was his impression that defendant did business in eleven States. At the time of trial, plaintiff was selling automobile, fire and liability insurance but had not broken even in that business. He stated that sale of life insurance is best when done in one locality to customers with whom the agent is acquainted, and in whom they have confidence. Defendant ranked its agency managers throughout the State of Illinois and plaintiff was in the top ten of 101 counties. He testified that he could reasonably expect to receive $63,250 in renewals from business that was already "on the books" when he was terminated.

Under the contract the "renewals" are percentages of the annual premiums paid by the insured to keep the policy in force. The plaintiff was entitled to commissions on the annual premiums commencing with the second year of the policy and continuing through the tenth year.

The initial question posed by this appeal is whether the provisions of *section 23 of the agreement between plaintiff and defendant constitute a contract in restraint of trade. If it is not, then the judgment*

of the trial court must stand. If the contract *is* in restraint of trade the common law test of reasonableness as to time, area, its effect upon the parties and the public becomes the pertinent inquiry. As demonstrated by *House of Vision v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21; *Canfield v. Spear*, 44 Ill.2d 49, 254 N.E.2d 433, for example, cases involving restraint of trade have most commonly arisen in the context of a contract which completely prohibits the employee from engaging in competition with his former employer within a designated area for a specified period of time. We are unaware of any case in this State which has involved the covenant here in question.

Other jurisdictions have passed on the question and have, in most instances, rejected the contention that a contract provision, such as that contained in section 23, is in restraint of trade, and, in some instances, found the restraint to be reasonable. These cases are collected in 36 A.L.R.3d 958, beginning at p. 1024.

In *Masden v. Travelers Ins. Co.* (8th Cir. 1931), 52 F.2d 75, the contract provided for forfeiture of renewal commissions in the event, that the employee, within one year of termination of the contract, became employed by another insurance company and worked in the territory specified in the agreement. The court found the provision to be enforceable since it was limited both as to time and area.

Similar provisions have been upheld in the following cases. The time and area in each case was limited, however those factors were mentioned only in *Stancliff, infra. Himes v. Masonic Mut. L. Assoc.* (1926), 215 Ala. 183, 110 So. 133 (2 years in specified area); *Bohrnstedt v. Travelers Ins. Co.* (1928) 123 Or. 539, 262 P. 938 (1 year in specified area); *Stancliff v. Southland L. Ins. Co.* (Tex. Civ. App. 1943), 172 S.W.2d 521 (2 years in specified area).

At the other end of the spectrum are cases such as *Chase v. New York Life Insurance Co.* (1905), 188 Mass. 271, 74 N.E. 325, which involved an agreement providing for the payment of renewal premiums following termination of the agency provided that the agent "shall not be engaged in the business of life insurance for any other company, in any capacity whatever, in the State of Massachusetts, during the maturity of said renewal commissions". The court, in denying the plaintiff's claim for commissions said, "*As the plaintiff sues upon the contract, he must abide by its terms * * *"* and held that since plaintiff had chosen, in violation of the agreement, to engage in the business of life insurance in Massachusetts he could not recover. (Emphasis added.)

Another much cited case is *Barr v. Sun Life Assurance Co.* (1941), 146 Fla. 55, 200 So. 240. There the agreement between the agent and the company provided for payment of commissions on renewal pre-

miums for a period up to ten years and continuing after termination of the agents employment provided "that the agent does not become connected with or do business * * * with any other life assurance company." Thus the time limitation was measured by the period of time during which commissions on renewals were to be paid, and the area was unlimited. The court sustained the contract saying, *"There is nothing in this contract which precludes the employee from accepting other like employment after the termination of his contract with Sun Life Assurance Company. Therefore, it is not a contract in restraint of trade * * *."* (Emphasis added.)

In *Pankey v. Federal Life Insurance Co.* (1936), 287 Ill.App. 132, 4 N.E.2d 642, the plaintiff sued to recover renewal commissions accruing after termination of his employment with defendant. The contract provided that the right to commissions would terminate should plaintiff "switch or attempt to switch any policyholder or agent of the Company." The principal issue was whether or not there was sufficient evidence to sustain the jury's finding that plaintiff had switched policyholders in contravention of the contract. Restraint of trade was not an issue.

*Van Pelt v. Berefco, Inc.* (1965), 60 Ill.App.2d 415, 208 N.E.2d 858, involves an issue peripheral to the issue here. The plaintiff sought declaratory judgment that he was entitled to retirement benefits. The court, applying *Massachusetts law,* upheld a provision in a retirement plan which provided that if a retiree became associated with the operation of any business involving the manufacture or sale of products similar to those produced by the employer, the retiree shall be deemed to have waived a certain amount of retirement income benefits. The court stated: "There is no restraint here upon plaintiff's right to future employment. He is free to engage in competition with new Berry without restraint or interference by defendants, *but he is not* free to do so while accepting benefits of the retirement plan *to which he contributed nothing."* (Emphasis supplied.) (60 Ill.App.2d at 428.) Cases involving forfeiture of renewal earnings under an insurance agency contract and cases involving forfeiture of future pension rights, for engaging in competition, have been treated as being governed by the same principles. (*Rochester Corp. v. Rochester* (4th Cir. 1971), 450 F.2d 118.) Other courts, however, do not follow the Massachusetts rule and have reached a result opposite from that in *Berefco* in cases involving forfeiture of pension benefits in the event that the ex-employee is subsequently employed by a competitor. For a compilation of cases involving the problem, see 50 Cornell L. Q. 673, and 61 Nw. U. L. Rev. 290.

We have cited representative cases which set forth the rule followed

in the various jurisdictions which have passed on the issue here presented. The citations by no means exhaust the list but they are, we believe, fairly representative. We are mindful that "* * * decisions of other jurisdictions, while not determinative, are entitled to respect." (*Cooper v. Hinrichs*, 10 Ill.2d 269, 275, 140 N.E.2d 293.) But the weight to be given to such precedents is dependent upon the persuasiveness of the reasoning which supports them. Our responsibility therefore, is to examine the rule, the reasons supporting it, and its effect upon those to whom it applies.

Analysis of the cases, and particularly those which uphold covenants as sweeping as the one incorporated in this contract, indicates that the rationale supporting the conclusion that the covenants are not in restraint of trade seem largely predicated upon two propositions: (1) That the condition upon which the employee is to receive commissions on renewal premiums is a contractual one into which he is free to enter, and by which he must abide in order to receive the commissions; and (2) The contract in no way precludes him from working for another company and engaging in his occupation. These two factors then lead to the conclusion that there is no restraint of trade.

With reference to the first of the two propositions: The fact that the parties are "free to contract" does not, in and of itself, operate to bestow legitimacy upon each and every provision contained in the instrument. The cases completely prohibiting the employee from pursuit of his occupation for a period of time in a specified area also arise from contract provisions into which the parties were "free to enter". (*House of Vision v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21; *United Travel Service, Inc. v. Weber*, 108 Ill.App.2d 353, 247 N.E.2d 801; *Professional Business Management v. Clark*, 83 Ill.App.2d 236, 227 N.E.2d 371.) In such cases the courts of this State have not inclined to the view that the freedom and right to contract removes from scrutiny the provisions of the contract when it is charged that they are in restraint of trade. To hold otherwise is to provide the answer by reciting the question. It is begging the question to say that the parties are free to contract, did so, and therefore are bound by it no matter what it contains. We do not agree with the proposition that since the parties are free to contract concerning renewal premiums, it necessarily follows that the provisions are not in restraint of trade.

■■ Neither can we agree with the second proposition upon which the rule is bottomed. The cases repeat the statement, in various ways, that provisions such as contained in section 23 of this agreement, do not obligate the employee to desist from earning a livelihood in the insurance business, or that the provision does not in any way restrain plaintiff

from following his trade, profession or business; that there is nothing in the provision which precludes the employee from accepting other like work. We respectfully disagree with this analysis of the contract terms for the reason that it seems to us to be based upon concepts completely divorced from practical reality. True, the terminated employee cannot be restrained, *i.e.*, enjoined, from pursuing his occupation nor is he obligated to refrain from so doing, but this is only half the problem. If he *does* elect to engage in his occupation what consequences follow as a result of the contractual provision? He forfeits his right to commissions which he would have received but for the contractual terms, and this after he has performed all of the services required of him during his relationship with the defendant. Commissions on renewal premiums is a method by which defendant agreed to compensate plaintiff for the services he rendered, and to say that the prospective loss of those commissions does not operate to significantly restrict his right to engage in the pursuit of his occupation following termination of his relationship with the company, and by the same token reduce, if not eliminate competition is, in our view, to divorce the practical application and consequences of the covenant from the hard facts of economic reality. Here the plaintiff has worked only in the State of Illinois for the defendant in the pursuit of his occupation and his efforts have apparently been confined to Coles County since 1952. Under the restrictions of section 23 of the contract he is prohibited, except on forfeiture of his right to renewal commissions, from representing any other life insurance company *in any capacity* not only in Illinois but in the eleven-State area in which it appears to be authorized to do business. He is then precluded, for example, from working in that area as an actuary, claims supervisor or in any other capacity for any other company. To state the restriction is to demonstrate its breadth. The contract clearly extracts a penalty of significant proportions in the event that plaintiff seeks to engage in his occupation. We hold that portion of section 23 which prohibits plaintiff from representing any other life insurance company in any capacity, or from engaging in the sale of insurance policies except on forfeiture of renewal premiums is a provision in restraint of trade. "The validity of a contract in restraint of competition is conditioned upon its reasonableness in terms of its effect upon the parties to the contract and the public. 'In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee. [Citations omitted.]' " *House of Vision v. Hiyane*, 37 Ill.2d 32, 37, 225 N.E.2d 21.

■■ Tested by these standards the covenant in question does work un-

due hardship on the plaintiff, the restraint imposed is far greater than necessary to protect the defendant. That portion of section 23 which provides for payment of renewal premiums upon termination of plaintiff's representation of the defendant we hold to be severable from that portion which seeks to impose a restraint herein held to be illegal. The provisions in question do not become operative until termination is effected and we refuse to hold that plaintiff's right to renewal commissions was conditioned solely on compliance with an illegal condition and that his right to the commissions falls with the condition. This would indeed leave the plaintiff without a remedy. Plaintiff is entitled to the commissions and we so hold. (*Mackie v. State Farm Mutual Automobile Insurance Co.*, 13 Mich.App. 556, 164 N.W.2d 777.) We do not mean to imply that the defendant has no legitimate interest in the area of customer contact which is undeserving of protection under certain circumstances, but it has continued access to the courts if that interest be unfairly invaded.

For the reasons above set forth the judgment of the Circuit Court is reversed.

Judgment reversed.

SMITH, P. J., and TRAPP, J., concur.