JAMES R. TORRENCE, Plaintiff-Appellant, v. HEWITT ASSOCIATES, Defendant-Appellee.

First District (3rd Division)   No. 85—2699

Opinion filed May 7, 1986.

David S. Acker, of Chicago (Winston & Strawn, of counsel), for appellant.

Duane C. Quaini, Steven H. Frankel, and Steven M. Levy, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, James R. Torrence, brought this action against his former employer, defendant, Hewitt Associates, seeking to have the forfeiture provision in his noncompetition agreement declared invalid and unenforceable. The trial court granted Hewitt's motion for summary judgment on the basis that Torrence violated the valid agreement when he began working for a competitor of Hewitt.

Hewitt is an Illinois partnership which provides consulting services in the area of employee compensation, benefits, communications and related services. Torrence, an attorney, was a partner at Hewitt from 1977 until he resigned in May 1981. He specialized in flexible compensation, a method of providing employees with various alternative taxable and nontaxable benefits. The Hewitt articles of partnership, as amended in October 1980 and executed by Torrence, included section 9.03(c)(iii), which provided that for a two-year period after leaving Hewitt, partners could not:

> "directly or indirectly, alone or as a partner, employee, agent, consultant, entrepreneur, venturer, owner, or stockholder *** engage anywhere [within 50 miles of a Hewitt office] in any business activity which is competitive with any business activity conducted by the partnership at the Termination Date ***."

The articles also restricted former partners from soliciting work from, or performing work for, Hewitt clients, and from attempting to hire Hewitt employees. A liquidated-damages clause provided:

> "If a partner violates section 9.03(c)(ii), *** the partnership shall be entitled to recover from such partner liquidated damages in an amount equal to 30% of such partner's average Partnership Share ***; upon collection by the partnership of such liquidated damages it shall waive its right to obtain specific performance and injunctive relief with respect to such violation."

The articles further stated that the partners agreed the noncompetition agreement was reasonable and necessary to preserve the inter-

ests of the partnership and that the liquidated-damages provision had been carefully read, that it balanced the interests of the partnership and withdrawn partner in an equitable manner, and that the formula was calculated reasonably and represented the best judgment of fairness by all partners.

In May 1981, Torrence resigned from Hewitt. He became director of legal service and general counsel to A. S. Hansen, Inc., a competitor of Hewitt which provides the same services as Hewitt and which has its offices within 50 miles of the Hewitt offices. Hewitt responded by deducting $30,000 from Torrence's capital account and retaining that amount as liquidated damages. Torrence subsequently filed this declaratory action, and discovery proceedings began.

Landrum M. Fisher, president of Hansen, testified at his deposition that "the flexible-compensation practice has grown by leaps and bounds in Hansen and Hewitt and Wyatt and everyone of our competitive companies," and that at Hansen, Torrence "has been a contributor to that growth." Torrence improved the quality of Hansen's legal services, which included the flexible-compensation activities. Fisher also testified that Torrence has "[a] very unique skill," and that "Jim brought that skill to us." Moreover, when Torrence joined Hansen, it announced his arrival: "We are looking to Jim to provide a much needed resource capability in the areas of flexible compensation and internal communication." The announcement also stated that Torrence had been with Hewitt for eight years, the last five of which he was a partner.

William N. Bret, chairman of Hansen, testified at his deposition that Torrence installed flexible-compensation programs for Hewitt, and was a leader in helping Hansen develop similar programs "in the past year or so since '83. We made a conscious decision to enter the practice for competitive reasons, and he's been a factor in helping us to do that."

At his deposition, Robert W. Zentz, assistant general counsel for Hansen and a former staff attorney for Hewitt, stated that Hewitt treated certain materials in a confidential manner when Zentz worked there. These materials included Hewitt's client list and its annual financial reports which were passed out to employees at meetings but collected at the end of each meeting.

Peter E. Friedes, a Hewitt partner, gave a sworn affidavit that Hewitt generates certain data which is distributed only to partners. This includes partnership financial analyses, future business plans, partnership candidate information, and potential affiliations and acquisitions. He stated further that the data is of great value to Hewitt, is

not accessible to competitors, and that every effort is made to keep the information confidential. Friedes also stated that Hewitt's reports regarding flexible compensation, one of the most significant areas of its business, were disseminated on a restricted basis. The reports were identified as being confidential, and recipients, by accepting the reports, were deemed to have agreed not to disclose their contents.

Torrence testified at his deposition that at Hansen he spent approximately 20% of his time consulting in the flexible-compensation area. He also stated that as a partner with Hewitt he obtained financial statements and analyses, and attended partnership meetings. Torrence obtained information relating to Hewitt's future business plans, new services that would be offered to clients, and particular problem areas.

After discovery was completed, the trial court granted Hewitt's motion for summary judgment, finding that the restrictive covenant was valid and enforceable; that the employee was in a position of trust and confidence; that the covenant had reasonable limitations; and that the liquidated-damages clause was triggered when Torrence went to work for a competitor. The trial court subsequently denied Torrence's motion for reconsideration, and Torrence appeals from both orders.

■ Torrence contends that his mere employment by a competitor fails to constitute a breach of the employment agreement not to compete, thus precluding invocation of the forfeiture clause. Actual proof of direct competition is not necessary where there is a showing that the two employers provide the same services in the same geographical area and consider themselves to be competitors. (*Gorman Publishing Co. v. Stillman* (N.D. Ill. 1980), 516 F. Supp. 98.) The parties here agree that Hewitt and Hansen are competitors.

■ Furthermore, Torrence possessed a unique skill in the area of flexible compensation that was advantageous to a competitor. The. testimony of both Torrence and his new employers revealed that Torrence used the same skill for Hansen that he had used for Hewitt. Hansen hired Torrence because of this "resource capability" that he offered. With Torrence's contribution, Hansen's flexible-compensation practice grew "by leaps and bounds." Torrence's new employers stated that Hansen had decided to enter the practice of flexible compensation "for competitive reasons," and that Torrence was a factor in helping it accomplish that goal.

In light of this testimony, Hewitt and Hansen were in direct competition, and Torrence's new employment enhanced this competition, especially in the area of flexible compensation. Thus, Torrence did

more than merely work for an employer in the same line of business as Hewitt. He did not work in an unrelated area, but provided Hansen with the same unique skills that Hewitt initially sought to protect by drafting and entering into the restrictive-covenant agreement. This was in violation of the agreement not to engage "directly or indirectly, alone or as a partner, employee, agent [or] consultant *** in any business activity which is competitive with any business activity conducted" by Hewitt.

Torrence's reliance on *Parenti v. Wytmar & Co.* (1977), 49 Ill. App. 3d 860, 364 N.E.2d 909, in support of his argument that he did not compete with Hewitt in violation of the agreement is misplaced. In *Parenti,* the court found the evidence did not support the conclusion that plaintiff competed with defendant. The profit-sharing plan at issue provided for forfeiture where a former employee was employed by a competitor. The employee went to work for a company in the same line of business, but no evidence was presented to show that the former and present employers were competing. There was evidence that the employee serviced subsidiaries of two companies that the employer had serviced while employing him. Yet, the former employer failed to show it had serviced the subsidiaries, or that the employer had solicited the subsidiaries, or that the parent companies were still customers of the employer. The court concluded that the former and present employers were not competitors, and thus the employee did not violate the covenant not to compete. We find the situation in *Parenti,* where two employers in the same line of business in the same geographical area are not competitors, to be unique. As stated above, the record in the present case reveals a dissimilar situation. Here, the testimony shows that the two employers do in fact compete with each other and that this competition is enhanced by Torrence's employment with Hansen. Thus, the competition is not insubstantial, isolated, or speculative. See *Parenti v. Wytmar & Co.* (1977), 49 Ill. App. 3d 860, 364 N.E.2d 909.

■ Torrence also contends that Hewitt unreasonably invoked the forfeiture provision because its business interests were adequately protected when he did not solicit Hewitt's clients or employees for the applicable two-year period. Noncompetition agreements must protect a legitimate business interest. (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68.) An employer has the right to protect certain client relationships. (*McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306.) However, the fact defendant successfully protects the client relationship does not mean it had no other protectable interests. The provision of the noncompetition

agreement here was not restricted to specific employee or customer relationships. It also included a provision meant to protect Hewitt's overall confidential business activities from which it derives economic benefits. An employer has the right to protect itself from disadvantageous use of confidential information revealed to an employee during the course of his employment. (*Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 448 N.E.2d 947; *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) A covenant to protect an employer from the erosion of confidential information will be enforced if it is reasonable, and such a determination is a question of law. *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.

■ We find the present covenant to be reasonable. It will not cause undue hardship to Torrence, because he was aware of the forfeiture provision when he negotiated and executed the agreement. Additionally, when he resigned, Torrence was told by Hewitt that the forfeiture provision would be enforced. Moreover, the enforcement of the covenant will not injure the public, as no injunction impairs Torrence's right to work and the public will still have access to his skills.

■ Finally, the covenant does not impose a restraint greater than that which is necessary to protect Hewitt's legitimate interests. In view of Torrence's position as a partner and his access to confidential information of a sensitive nature, in combination with his unique skills, Hewitt had a legitimate interest to protect. The particular information to which Torrence had access, including financial data, future business plans, client lists, confidential reports regarding flexible compensation and other subjects, could substantially affect competition in the field. Moreover, Torrence developed his unique skills and expertise while in Hewitt's employ. This training is advantageous to competitors, as evidenced by the announcement Hansen sent out and the deposition testimony of Hansen's officers. (See *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.) In fact, Torrence testified that he was contacted by a Hewitt customer during the two-year restricted period. A letter was introduced as an exhibit, reflecting that Torrence had a telephone conversation with Hewitt's client, and the client expressed concern about the services and fees charged by Hewitt. Torrence, in the letter, stated: "Knowing what and who is involved, I also suspect that there are some problems which have come to your attention as to the technical accuracy of what has already been done for you." The letter also stated: "Further, our competitor charges a lot of money for their efforts." When questioned about this letter at his deposition, Torrence replied that he

was merely repeating comments made by the client during their conversation. This evidence reflects, however, that Torrence was able to use technical and financial information learned while working at Hewitt. We conclude that Hewitt did disclose to Torrence confidential information which justified the need for a protective covenant. Thus, Hewitt may seek a remedy for Torrence's violation of this particular provision of the agreement, notwithstanding Torrence's compliance with other provisions in the agreement.

■ Finally, Torrence asserts that the 50-mile restriction is overbroad because it covers virtually all of the Chicago metropolitan area. A geographic area is not unreasonable if it is coextensive with the area in which the employer does business. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) Hewitt conducts most of its business within 50 miles of its offices, and thus the 50-mile restriction is reasonable. While Torrence points to *Parenti* for support on this issue, the *Parenti* court did not address the issue of whether the geographic limitation was reasonable.

We find that Hewitt had a protectable interest (*Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060); that Torrence occupied a position of trust and confidence within the partnership (*Peskin v. Deutsch* (1985), 134 Ill. App. 3d 48, 479 N.E.2d 1034); and that Torrence breached the agreement when he worked for a competitor of Hewitt in a position that enhanced the competition (*Gorman Publishing Co. v. Stillman* (N.D. Ill. 1980), 516 F. Supp. 98). For these reasons, the trial court was correct in finding that, as a matter of law, Torrence has violated the agreement not to compete, and Hewitt properly invoked the forfeiture provision of that agreement.

For the reasons stated, the judgment of the circuit court of Cook County granting summary judgment in favor of Hewitt is affirmed.

Judgment affirmed.

RIZZI, P.J., and WHITE, J., concur.