UNITED LABORATORIES, INC., A DELAWARE CORPORATION v. WILLIAM DOUGLAS KUYKENDALL, AND SHARE CORPORATION, A WISCONSIN CORPORATION

No. 8628SC1204

(Filed 20 October 1987)

1. **Contracts § 7.1; Master and Servant § 11.1— covenant not to compete—invalidity under Illinois law**

   Under Illinois law, a provision for forfeiture of benefits for breach of a covenant not to compete in a 1983 supplementary compensation agreement between a manufacturer of chemical cleaning products and its sales representative was not enforceable because plaintiff manufacturer did not have a legitimate protectable business interest either (1) on the basis of a near-permanent relationship with its customers or (2) on the basis that information about its customer lists obtained by defendant sales representative constituted trade secrets or confidential information where all of the evidence established that plaintiff's customers were generally short-term, impermanent customers whose business was solicited by defendant through his own efforts, plaintiff's customers frequently changed chemical suppliers, and the identity of plaintiff's customers could easily be discovered by reference to telephone directories or industry publications.

2. **Contracts § 7.1; Master and Servant § 11.1— employment contract—covenant not to compete—protection of legitimate business interest**

   Before a covenant not to compete in an employment contract can be found reasonably necessary for the protection of a legitimate business interest, it is necessary to find that the employee, as a result of his employment, acquired intimate knowledge of the nature and character of the employer's business which was not otherwise generally available to the public.

3. **Contracts § 7.1; Master and Servant § 11.1— covenant not to compete—failure to protect legitimate business interest**

   A covenant not to compete in a 1982 sales representative agreement between plaintiff manufacturer of chemical cleaning products and defendant was not enforceable under North Carolina law because it does not protect a legitimate business interest of plaintiff employer where there was no evidence that defendant received any information about plaintiff's business, other than pricing information, not available to the general public; defendant's knowledge about the buying habits and special needs of plaintiff's customers and the cyclical nature of their orders was acquired through the efforts of defendant; there was no protectable interest in plaintiff's pricing information because this information changed frequently; and there was no evidence that defendant used this information to his advantage.

4. **Contracts § 34— employment terminable at will—hiring not tortious interference with contract**

   Where the parties were engaged in the competitive business of selling cleaning chemicals, defendant was not guilty of tortious interference with con-

tract when it hired an employee of plaintiff whose employment contract was terminable at will.

**5. Unfair Competition § 1— unfair trade practices—unenforceable covenants not to compete—demand for new trial**

　　The trial court erred in entering a directed verdict for plaintiff in an unfair trade practices action against plaintiff's former employee and his present employer on the basis of unenforceable covenants not to compete; however, the cause is remanded for a new trial to determine whether other alleged actions by defendants constituted unfair or deceptive trade practices.

　　Judge PHILLIPS dissenting.

　　APPEAL by defendants from *Fountain, Judge*. Judgment entered 25 June 1986 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 5 May 1987.

　　*Petree, Stockton & Robinson, by Jackson N. Steele, and Simon & Welnhofer, by Paul G. Simon, for plaintiff-appellee.*

　　*Brock & Drye, by Michael W. Drye, and Fox, Carpenter, O'Neill & Shannon, by Bruce C. O'Neill, for defendant-appellants.*

　　GREENE, Judge.

　　Plaintiff filed suit seeking injunctive relief requiring defendant Kuykendall to comply with the noncompetition provisions in two agreements and requiring defendant Share Corporation to refrain from interfering with those agreements and using information acquired by the breach of the noncompetition provisions. Plaintiff also requested damages and attorney's fees.

　　Kuykendall was at one time employed by plaintiff as a sales representative. At the time the complaint was filed, he was a sales representative for defendant Share Corporation, one of plaintiff's competitors in the cleaning chemical business. On 8 January 1986, the trial court entered a preliminary injunction against Kuykendall and "all persons in active concert or participation with him . . . ." Plaintiff's action for a permanent injunction and damages was tried before a jury.

　　Plaintiff manufactures chemical cleaning products which it retails through sales representatives. Plaintiff's method of selling its products is typical of the cleaning chemical business: each sales representative is given designated territories. Some terri-

tories are exclusive, while others are designated as "open-registered."

During its case, plaintiff offered evidence tending to show that it first employed Kuykendall as a sales representative in 1971. It trained Kuykendall in customer services. In 1979, Kuykendall left plaintiff's employ and began working for a competitor in the same sales territory which he had previously covered for plaintiff. Shortly thereafter, plaintiff rehired Kuykendall as a regional sales manager. In 1982, Kuykendall returned to his former position as one of plaintiff's sales representatives. Plaintiff provided sales literature, samples, supplies and information as to potential customers in Kuykendall's assigned sales territory in western North Carolina. At that time, he and plaintiff entered into a "Sales Representative Agreement" (hereinafter the "1982 agreement"). In 1983, Kuykendall enrolled in plaintiff's profit sharing plan for sales representatives and signed a "Supplementary Compensation Agreement" (hereinafter the "1983 agreement").

The 1982 and the 1983 agreements were admitted into evidence. They both contained noncompetition clauses. The 1982 agreement stated that North Carolina law would apply to its interpretation and enforcement. The 1983 agreement designated Illinois law as controlling. Although entitled "Supplementary Compensation Agreement," the 1983 agreement contained the following provision: "This Agreement contains all of the terms agreed upon by the parties with respect to the subject matter hereof and supersedes all prior agreements, arrangements and communications between the parties dealing with such subject matter, whether oral or written."

Sometime around August 1985, Kuykendall left plaintiff's employ to work for Share Corporation. He then began calling on some of the same customers he had called on when he worked for plaintiff. Plaintiff presented evidence that Share Corporation was aware of the 1982 and 1983 agreements and that Share told Kuykendall it would pay the cost of any lawsuit plaintiff might bring against Kuykendall for breach of the noncompetition provisions. Plaintiff also introduced evidence that, after Kuykendall was employed by Share Corporation, plaintiff's gross sales to the customers Kuykendall had originally serviced decreased by $5,804 per

month. After the close of plaintiff's evidence, defendants made motions for directed verdicts which the trial court denied.

Defendants offered evidence tending to show the cleaning chemical business is very competitive and sales representatives must compete not only with representatives from other companies, but often also with representatives from their own company. Territories in which they must compete with other representatives from their own company are called "open-registered accounts." In an "open-registered" territory, a customer account becomes "registered" to a particular sales representative once that sales representative makes a sale to the customer. No other representative from the "registered" representative's employer may call on that customer until the "registered" sales representative fails to make a sale to that customer for a specified period of time. Plaintiff's period of time was nine months.

Defendants' evidence also tended to show that after his initial employment with plaintiff in 1971, Kuykendall was not provided with any customer information or sales leads. He had to develop his own customers within the territories assigned to him. When he went back into sales in 1982, plaintiff did not provide him with any customer information or accounts. Some of the sales territories Kuykendall received in 1982 were "open-registered" territories.

Defendants also presented evidence that in 1985 Kuykendall began looking for other work because he was dissatisfied with his employment with plaintiff. In February 1985, he saw an advertisement in a local newspaper that Share Corporation was seeking a chemical sales representative. He subsequently interviewed with Share Corporation and agreed to work for the company. Kuykendall testified that had he not gone to work with Share Corporation, he nevertheless would have left plaintiff's employ.

At the end of all the evidence, the trial court ruled that the 1982 agreement was superseded by the 1983 agreement, allowed plaintiff's motions for directed verdict on the issues of whether Kuykendall violated the 1983 agreement, whether Share Corporation had interfered with plaintiff's contractual rights, and whether the defendants' actions constituted unfair and deceptive trade practices in violation of N.C.G.S. Sec. 75-1.1. The trial court denied defendants' motions for directed verdict and submitted the

issues of damages and attorney's fees to the jury. The jury re-
turned a verdict awarding plaintiff $77,477.77 in damages and
$47,522.23 in attorney's fees. Plaintiff agreed to a remittitur of
the damages. On 21 July 1986, the trial court trebled the damages
pursuant to N.C.G.S. Sec. 75-1.16 and entered a judgment and per-
manent injunction. The court ordered that plaintiff recover from
defendants jointly and severally the sum of $116,216.67 for dam-
ages and $47,522.23 in attorney's fees. The injunction restrained
defendants from violating the provisions of the noncompetition
agreement. Defendants appeal.

The issues we must determine are: 1) whether the 1983
agreement is enforceable, 2) whether the 1982 agreement is en-
forceable, 3) whether it was error for the trial judge to direct a
verdict against defendant Share Corporation for interference with
the agreements, and 4) whether it was error for the trial court to
direct a verdict against defendants for their alleged violation of
N.C.G.S. Sec. 75-1.1.

I

[1] The 1983 agreement was executed in Illinois. The parties
agreed it would be construed and governed by Illinois law. The
courts of this State will give effect to such contractual provisions.
*Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E. 2d 655, 656 (1980).

The introductory paragraph to the 1983 agreement stated
that:

> The Company, desiring to assure itself of the benefit of Rep-
> resentative's special knowledge and sales ability in the
> future, including the period after termination of Repre-
> sentative's agreement to solicit orders for the Company's
> products, has proposed a Supplementary arrangement where-
> under benefits will be made available to Representative for a
> specified period following retirement of Representative.

The agreement provided that Kuykendall would provide consult-
ing services to plaintiff after his retirement and would "hold in a
fiduciary capacity . . . all secret or confidential information, cus-
tomer lists, or other data of the Company not generally known
within the Company's trade which has been divulged in confi-
dence to him or otherwise acquired by him during the Represen-
tation or during Retirement . . . ." The agreement also provided

that Kuykendall would not, for eighteen months after leaving plaintiff's employ,

> engage in or be connected or concerned in any manner, directly or indirectly, with the operation or conduct within the Territory of any business, other than the Company's, which engages in the manufacture, storage, distribution, sale or other disposition of any product or service which is in competition with any product manufactured, stored, distributed, sold or otherwise disposed of by the Company or any service provided by the Company and he shall not take part in any activity detrimental to the Company's business.

The agreement further stated that should Kuykendall commit an act in violation of the restrictive covenants, "the Company shall not thereafter be obligated to make any distribution of benefits" provided for in the agreement.

Unlike North Carolina, Illinois defines "restraints of trade" to include agreements in which an employee agrees to forfeit particular benefits in the event he engages in competition with his former employer. *Compare Johnson v. Country Life Ins. Co.*, 12 Ill. App. 3d 158, 300 N.E. 2d 11 (1973) *and Parenti v. Wytmar & Co.*, 49 Ill. App. 3d 860, 364 N.E. 2d 909 (1977) *with Hudson v. Insurance Co.*, 23 N.C. App. 501, 209 S.E. 2d 416 (1974), *cert. denied*, 286 N.C. 414, 211 S.E. 2d 217 (1975). Under Illinois law, the 1983 agreement is a covenant in restraint of trade. As such, it is enforceable "only if the time and territorial limitations are reasonable and the restrictions are reasonably necessary to protect a legitimate business interest of the employer." *Reinhardt Printing Co. v. Feld*, 142 Ill. App. 3d 9, 15, 490 N.E. 2d 1302, 1307 (1986).

Defendants contend plaintiff is not entitled to enforce the 1983 "Supplementary Compensation Agreement" because it failed to establish the existence of a legitimate business interest sought to be protected by the agreement. A legitimate business interest arises in two situations under Illinois law:

> (1) [W]here, by the nature of the business, plaintiff has a near-permanent relationship with its customers and but for his or her employment, defendant would not have had contact with them; or (2) where the former employee learned trade secrets

or acquired other confidential information while in plaintiff's employ and subsequently attempted to use it for his or her own benefit.

*Reinhardt Printing Co.*, 142 Ill. App. 3d at 16, 490 N.E. 2d at 1307. Factors that bear on whether a near-permanent relationship exists include "the time, cost and difficulty involved in developing and maintaining the clientele, the parties' intention to remain affiliated for an indefinite period, and the continuity as well as the duration of the relationship." *Id.*   (citing *McRand Inc. v. van Beelen*, 138 Ill. App. 3d 1045, 486 N.E. 2d 1306 (1985) ).

Plaintiff did not specifically allege in its complaint that its relationships with its customers are near-permanent, though it alleged nearly all the factors which bear on that question. We conclude, however, that plaintiff does not have a legitimate protectable business interest in its customers on the basis of a near-permanent relationship with them. Plaintiff's employee, Eric Frazier, testified that some of its customers would buy from more than one chemical company at the same time. He further stated that, if a sales representative had been unable to make a sale to a customer within nine months of the last sale, the customer was either no longer buying chemical products or was purchasing them from another sales representative. Defendant Kuykendall testified that no customer he sold to while a sales representative for plaintiff bought chemical products exclusively from plaintiff. Evidence from both plaintiff and defendants was that plaintiff's type of chemical business is very competitive and that a sales representative for a company like plaintiff acquires knowledge of potential customers by consulting readily available sources such as telephone directories. In addition, while plaintiff alleged it expended substantial amounts of time and money in "developing customers" and in training sales representatives to aid in that development, the evidence does not support its allegations even when viewed in the light most favorable to it. We find all the evidence establishes that plaintiff's customers are generally short-term, impermanent customers whose business was solicited by defendant Kuykendall through his own efforts on plaintiff's behalf.

Having so found, we must next inquire whether plaintiff had a legitimate business interest in trade secrets or confidential in-

formation. A trade secret is "a plan or process, tool, mechanism, compound, or informational data utilized by a person in [an employer's] business operations and known only to him and such limited other persons to whom it may be necessary to confide it and . . . must relate to something held in secret or confidence and to the operations of a particular trade or business." *Reinhardt Printing Co.*, 142 Ill. App. 3d at 17, 490 N.E. 2d at 1308 (citations omitted).

Plaintiff alleges it supplied Kuykendall with customer lists and information concerning customer needs and that these were valuable trade secrets. Kuykendall testified that when he was first hired by plaintiff in 1971, he was shown how to identify potential customers by looking in the yellow pages of the telephone directory. After two weeks of training to familiarize him with plaintiff's products and ordering procedure, he developed customers in his territories. Other than the testimony that plaintiff had given defendant copies of plaintiff's customer invoices in 1971, plaintiff presented no evidence that it had ever developed or maintained a customer list. It did not submit any customer list into evidence; even if it had, such information does not qualify as a trade secret or confidential information since the list could easily be duplicated by reference to telephone directories or industry publications. Further, where the customers on such a list do business with more than one company or otherwise frequently change businesses, the customers' identities are readily available to the employer's competitors. *Reinhardt Printing Co.*, 142 Ill. App. 3d at 19, 490 N.E. 2d at 1308-09.

The uncontradicted evidence is that plaintiff's customers frequently changed chemical suppliers and that their identity could easily be discovered by reference to telephone directories. Therefore, any customer list of plaintiff's could be easily duplicated. Thus, defendant has shown that plaintiff does not have a legitimate business interest in a customer list or trade secret to which he was privy.

Even when viewed in the light most favorable to plaintiff, the evidence shows that plaintiff did not have permanent relationships with its clients, and did not share trade secrets or other confidential information with Kuykendall. The 1983 benefits agreement therefore attempts to protect interests of plaintiff

which are not legitimate protectable business interests. Therefore, it is unenforceable against Kuykendall and the trial court erred in entering a directed verdict for plaintiff on the issue. The trial court should have entered directed verdict for defendant Kuykendall. Having made this determination, we need not address defendant's alternative contention that the time and territory limitations of the 1983 agreement are unreasonable.

## II

The time and territory restrictions in the 1982 agreement between plaintiff and Kuykendall were not as restrictive as those in the 1983 agreement. At the close of all the evidence, the trial court ruled that the 1982 "Sales Representative Agreement" was superseded by the 1983 "Supplementary Compensation Agreement." Plaintiff cross-assigns error to this ruling and argues that if the noncompetition clause of the 1983 agreement is unenforceable, those in the 1982 agreement are nonetheless valid and enforceable. Plaintiff argues the 1983 agreement did not supplant the 1982 agreement but merely supplemented it and that the provisions of the 1982 agreement are not made invalid by the invalidity of the provisions of the 1983 agreement.

"A new contract consistent with, or supplementary to, a prior contract does not discharge the prior contract." *Turner v. Turner*, 242 N.C. 533, 539, 89 S.E. 2d 245, 249 (1955). The "subject matter" of the 1983 "Supplementary Compensation Agreement" by its very title deals with defendant's supplementary compensation upon his retirement. The 1982 "Sales Representative Agreement," on the other hand, concerns defendant's compensation during his employment. Since the two agreements concern different subject matter, we find the 1983 agreement supplementary to the 1982 agreement and therefore the 1982 agreement was not discharged by the later contract. However, we find that, even standing alone, the noncompetition provisions of the 1982 agreement are invalid because they do not protect a legitimate business interest.

The 1982 agreement designates North Carolina law as controlling its interpretation and enforceability. As noted above in I, North Carolina distinguishes between agreements which provide for forfeiture of benefits by an employee for breach of non-competition promises and employment agreements containing a

covenant not to compete. Under North Carolina law, the latter is an agreement in restraint of trade, the former is not. *Hudson v. Insurance Co.*, 23 N.C. App. 501, 209 S.E. 2d 416 (1974), *cert. denied*, 286 N.C. 414, 211 S.E. 2d 217 (1975). Unlike the 1983 agreement, the violation of the noncompetition provisions in the 1982 agreement were not tied to the forfeiture of some benefit. Therefore, under North Carolina law, the 1982 agreement is an agreement in restraint of trade.

In North Carolina, agreements between employers and employees which restrain trade are valid and enforceable if they are: 1) in writing, 2) made a part of the employment contract, 3) based on valuable consideration, 4) designed to protect the legitimate interests of the employer and 5) reasonable in respect to both time and territory. *Robins & Weill, Inc. v. Mason*, 70 N.C. App. 537, 541, 320 S.E. 2d 693, 696, *disc. rev. denied*, 312 N.C. 495, 322 S.E. 2d 558 (1984). The question of whether an agreement meets these criteria is a matter of law for the court to decide. *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 663, 158 S.E. 2d 840, 843 (1968). Covenants not to compete ancillary to employment contracts are subjected to a more stringent test of reasonableness than the test applied to restrictive covenants ancillary to the sale of a business. *Id.*

The elements for an enforceable employment agreement in restraint of trade are frequently quoted in conjunction with those elements required for an enforceable covenant having to do with the sale of a business. However, few North Carolina opinions have focused on the fourth element: "legitimate interests of the employer." Several cases prior to 1985 separate the element and refer to it as requiring "fairness to the parties" and "not against public policy." *Exterminating Co. v. Griffin*, 258 N.C. 179, 181, 128 S.E. 2d 139, 140-41 (1962); *Starkings Court Reporting Serv. Inc. v. Collins*, 67 N.C. App. 540, 541, 313 S.E. 2d 614, 615 (1984); *Sales & Serv. v. Williams*, 22 N.C. App. 410, 413, 206 S.E. 2d 745, 747 (1974). Our review of several long-standing cases leads us to the conclusion that in North Carolina a legitimate business interest is a business interest, not fictitious, which, when weighed against the public's interest in a free economic arena, is worthy of protection in order to encourage and stimulate business efforts and innovations. *See Welcome Wagon International, Inc. v. Pender*, 255 N.C. 244, 120 S.E. 2d 739 (1961); *Kadis v. Britt*, 224 N.C. 154,

158-64, 29 S.E. 2d 543, 546-49 (1944); *Beam v. Rutledge*, 217 N.C. 670, 672-73, 9 S.E. 2d 476, 477-78 (1940).

[2]  Plaintiff contends it sought to protect its legitimate business interests by entering into the 1982 agreement. It contends that under North Carolina law it had a legitimate business interest in trade secrets and confidential information as well as in its customer relationships. The determination of whether an alleged business interest is a legitimate one must be accomplished on a case by case basis with attention to the particular facts and circumstances of each case. *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 663, 158 S.E. 2d 840, 843 (1968). Before a covenant can be found reasonably necessary for the protection of a legitimate business interest, we hold that it is first necessary to find the employee, as a result of his employment, acquired intimate knowledge of the nature and character of the business which was not otherwise generally available to the public. *See A.E.P. Indus. v. McClure*, 308 N.C. 393, 302 S.E. 2d 754 (1983) (the names and addresses of the employer's customers were not generally known in the trade and were confidential—covenant held valid); *Harwell Enter., Inc. v. Heim*, 276 N.C. 475, 173 S.E. 2d 316 (1970) (employee acquired knowledge of valuable trade and technical processes, customer lists, price information, and research and development information—covenant held valid); *Exterminating Co. v. Griffin*, 258 N.C. 179, 128 S.E. 2d 139 (1962) (employee acquired not only a list of plaintiff employer's customers, but also confidential information as to the employer's secret methods and processes—covenant held valid); *Kadis v. Britt*, 224 N.C. 154, 29 S.E. 2d 543 (1944) (no evidence that retail clothing salesman used confidential information from old job in his new employment—covenant held invalid); *Moskin Bros. v. Swartzberg*, 199 N.C. 539, 155 S.E. 154 (1930) (employee was manager and obtained intimate knowledge of business—covenant held valid); *Keith v. Day*, 81 N.C. App. 185, 343 S.E. 2d 562, *disc. rev. allowed*, 318 N.C. 416, 349 S.E. 2d 596 (1986), *rev. dismissed as improvidently allowed*, 320 N.C. 629, 359 S.E. 2d 466 (1987) (defendant gained knowledge of hardware store's business and inner workings, including general business practices—covenant held valid); *Manpower of Guilford County, Inc. v. Hedgecock*, 42 N.C. App. 515, 257 S.E. 2d 109 (1979) (employee was manager and gained knowledge of employer's customers, specialized business techniques and ac-

quired intimate knowledge of the employer's business — covenant held invalid because it exceeded reasonable territorial limitations).

[3] In this case, the type of business in which the plaintiff was engaged, chemical sales, is a highly competitive business. Many companies sell the same or similar type products and customers are matters of common knowledge and can easily be ascertained from public documents. The customer base was essentially developed by Kuykendall. While it is true the plaintiff trained Kuykendall as a sales representative, the training was aimed at developing the employee's skills in creating and maintaining customer relationships. There is no evidence that Kuykendall received any information about plaintiff's business, other than pricing information, that was not generally available to the public. Kuykendall's knowledge about the buying habits of the customers, the cyclical nature of their ordering, and the special needs of the customers, were all pieces of information acquired through the efforts of Kuykendall, not plaintiff.

In summary, those customers plaintiff seeks to enjoin Kuykendall from contacting were solicited by Kuykendall not because of his association with plaintiff, but rather through his own efforts on plaintiff's behalf. Furthermore, even if we make the questionable assumption that plaintiff's pricing information is confidential, there is still no protectable interest because this information changes frequently. Additionally, there is no evidence that Kuykendall used this information to his advantage.

Construing the evidence in the light most favorable to plaintiff, we conclude Kuykendall acquired no intimate knowledge as to the nature and character of plaintiff's business which was not otherwise generally available to the public at large. "All that clearly appears is that he [the employee] undertook to use in his new employment the knowledge he had acquired in the old. This . . . is not unlawful, for equity has no power to compel a man who changes employers to wipe clean the slate of his memory." *Kadis v. Britt*, 224 N.C. 154, 162, 29 S.E. 2d 543, 547-48 (1944) (quoting *Peerless Pattern Co. v. Pictorial Review Co.*, 147 N.Y. App. Div. 715, 717 (1911)). We therefore find that the 1982 agreement was not reasonably necessary to protect any legitimate interest of plaintiff and is therefore unenforceable. The trial court conse-

quently erred in denying defendant's motion for a directed verdict as to the 1982 agreement.

## III

[4] Defendant Share Corporation also contends the trial court erred in directing a verdict against it on the issue of its interference with the contract. We agree. An action in tort for interference with contract lies against an outsider who "knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party." *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E. 2d 176, 181 (1954), *reh'g denied*, 242 N.C. 123, 86 S.E. 2d 916 (1955). The tort of interference with contract has five elements: 1) a valid contract between the plaintiff and a third person which confers upon the plaintiff some contractual right against the third person, 2) the defendant knows of the contract, 3) intentionally induces the third person not to perform the contract, 4) and in so doing acts without justification, 5) resulting in actual damages to plaintiff. *Childress*, 240 N.C. at 674, 84 S.E. 2d at 181-82.

Since the noncompetition provisions in both the 1982 agreement and the 1983 agreement are unenforceable, interference with these provisions cannot be the basis of plaintiff's claim. However, with the restrictive covenants removed, there still remained a valid contract between Kuykendall and United, although it was one terminable at will by either party. Our Supreme Court has held that a party to a terminable at will employment contract may sue a third person who intentionally induces another party to the contract not to perform. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282 (1976) (terminable at will employment contract of plaintiff manager of auto dealership did not give defendant manufacturer the right to exert economic pressure upon dealership to terminate employment contract if actions in doing so not reasonably related to legitimate business interest of manufacturer). However, this Court has recently declined to extend the cause of action in the "context of a competitive business setting wherein a competitor recruited the competition's employees whose contracts were terminable at will." *Peoples Security Life Ins. Co. v. Hooks*, 86 N.C. App. 354, 356, 357 S.E. 2d 411, 413 (1987). *See also Childress*, 240 N.C. at 676, 84 S.E. 2d at 183 (dictum) (indicating that if plaintiff was in competition with defendants, defendants

were justified in interfering with contract terminable at will). On a first reading, the *Peoples Security* holding may seem to conflict with an earlier case from this Court which held that a competitor is not privileged to interfere wrongfully with contractual rights. *Overall Corp. v. Linen Supply, Inc.*, 8 N.C. App. 528, 174 S.E. 2d 659 (1970). After a study of the record in *Overall*, however, it is apparent that the contracts in that case were for fixed terms and therefore any interference with them was an interference with future performances to which the plaintiff was legally entitled. Like *Peoples Security*, our case concerns a contract terminable at will of which the plaintiff has no legal assurance, but merely an expectancy. As well, the parties here were engaged in the competitive business of selling cleaning chemicals. Therefore, Share's actions did not constitute a tortious interference with contract. In so deciding, we do not address the case where a terminable at will employment contract contains valid noncompetition provisions. *Cf.* Restatement (Second) of Torts Sec. 768 comment i (1979) (employment contract may be only partially terminable at will so that competitor might induce employee to quit job but would not be justified in hiring employee to work for him in activity that violates the noncompetition agreement). The tortious interference with contract action is remanded for entry of directed verdict for Share against United.

IV

[5] The remaining issue is whether Share's and Kuykendall's actions constituted unfair or deceptive trade practices under N.C.G.S. Sec. 75-1.1 which entitled plaintiff to treble damages and attorney's fees. The record reveals that the trial court relied on the stricken noncompetition provisions of the agreements to determine that the actions of Share and Kuykendall were unfair. That holding was in error. However, the complaint alleged actions in addition to the noncompetition provisions as bases for unfair or deceptive trade practices. From the record before us, we cannot determine whether the plaintiff's evidence was sufficient to make out a case under Section 75-1.1. In any event, it is a jury question as to whether the alleged acts were committed by defendants; it is a question of law for the trial court as to whether the facts proved constitute a violation of Section 75-1.1. *See Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). Therefore, we remand the case for a new trial on the unfair or deceptive trade practice

claim with the trial court submitting factual issues to the jury where appropriate.

## V

The parties assigned other errors which, because of our holdings above, we need not address. The trial court's entry of directed verdict in favor of plaintiff as to the 1983 agreement is reversed and remanded with directions that the trial court enter directed verdict in favor of defendant Kuykendall. The trial court's denial of defendant Kuykendall's motion for directed verdict as to the 1982 agreement is reversed and remanded for entry of directed verdict for defendant Kuykendall. The trial court's entry of directed verdict for plaintiff against defendant Share concerning the interference with contract claim is reversed and remanded for entry of directed verdict in favor of defendant Share. The trial court's entry of directed verdict for plaintiff with respect to the alleged Section 75-1.1 violations of Kuykendall and Share is reversed and remanded for a new trial to determine whether defendants' acts constituted unfair or deceptive trade practices.

Reversed and remanded.

Judge COZORT concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion (1) except for the finding that the 1983 contract superseded the 1982 agreement, the trial court's several findings and rulings were correct; (2) the 1983 contract supplemented the 1982 agreement; (3) the provisions of each contract are legally enforceable; (4) the verdict against the defendants is correct; and (5) the judgment appealed from should be affirmed.