UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MECHANICAL PLANT SERVICES,
INCORPORATED, a North Carolina
corporation with offices in New
Hanover County, NC,
Plaintiff-Appellant,

v.

DRESSER-RAND COMPANY, a New
York partnership owned by
Ingersoll Rand, a New Jersey
corporation, and Dresser Industries,
a Delaware corporation,
Defendant-Appellee.

No. 96-1896

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Chief District Judge.
(CA-95-156-7-F)

Argued: June 4, 1997

Decided: June 27, 1997

Before WILKINSON, Chief Judge, and WILKINS and
HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Hamilton wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Robert White Johnson, John Gregory Tillery, III, JOHN-
SON & LAMBETH, Wilmington, North Carolina, for Appellant.

Bradley Andrew Coxe, ANDERSON, DANIEL & COXE, Wrights-
ville Beach, North Carolina, for Appellee. **ON BRIEF:** Henry L.
Anderson, Jr., ANDERSON, DANIEL & COXE, Wrightsville Beach,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mechanical Plant Services ("MPS") sued Dresser-Rand Company,
alleging that Dresser-Rand had violated a non-solicitation agreement
which prohibited Dresser-Rand from hiring former MPS employees.
The district court granted summary judgment in favor of Dresser-
Rand, finding that Dresser-Rand had never assented to such an agree-
ment. MPS appeals, arguing that Dresser-Rand's course of conduct
constituted an acceptance of MPS's contractual terms despite the fact
that there was no signed agreement. We disagree. The facts reveal
that MPS's course of conduct constituted an acceptance of Dresser-
Rand's offer to form a contract which did not include the non-
solicitation agreement. Accordingly, we affirm the judgment of the
district court.

I.

MPS is a labor broker which provides the services of precision
millwrights. Those millwrights specialize in the construction and
repair of metal surfaces, including rebuilding rotating equipment such
as steam turbines, gas turbines, pumps, and compressors.

In 1990, Dresser-Rand Company contacted MPS requesting that
MPS provide a labor quotation. On March 7, 1990, MPS sent Dresser-
Rand a quotation on a form contract, which included the following
non-solicitation clause.

2

[Dresser-Rand] agrees not to employ any [MPS] employees, who have been terminated, released or who voluntarily quit for a period of one year from date of contract.[Dresser-Rand] also agrees not to use MPS's employees through other labor brokers, contractors, or any other vendor that provides goods or services to [Dresser-Rand] for a period of one year from date of contract. If [Dresser-Rand] deviates from the above clause, [Dresser-Rand] agrees to pay MPS a total of 2,000 manhours, per employee used at the straight time invoice rate.

On March 19, Dresser-Rand sent MPS a purchase order taking exception to this clause. The next day, MPS replied, refusing to acknowledge the exception. On March 26, R. M. Jennings, Dresser-Rand's Manager of Field Service Operations, responded by letter which stated: "Although it is not our intention to employ any of MPS's active employees, we do have a problem with signing your contract with regard to Paragraph VI. I think we should discuss this issue and try to resolve it to our mutual advantage." This letter was followed by a flurry of telephone negotiations between the two companies. Ultimately, Wayne Henry, MPS's vice-president, told Jennings that MPS would not send any employees to Dresser-Rand unless the non-solicitation clause was included in the contract.

Shortly thereafter, despite Henry's protestations, MPS began to provide Dresser-Rand with millwrights even though Dresser-Rand remained steadfast in its refusal to sign any document incorporating the clause. Indeed, throughout the five-year relationship between the two companies, MPS sent Dresser-Rand a form contract which included the objectionable clause every time Dresser-Rand ordered labor. Dresser-Rand never signed any of these contracts. Even so, MPS continued providing millwrights, and Dresser-Rand paid for the services rendered.

MPS brought this diversity action alleging that Dresser-Rand had employed a number of MPS employees in violation of the non-solicitation clause. MPS sought liquidated damages of $901,280. Dresser-Rand moved for summary judgment, which the district court granted on the grounds that MPS's course of conduct had constituted

3

an acceptance of Dresser-Rand's offer to enter into a contract which did not incorporate the non-solicitation clause. MPS appeals.

II.

It is undisputed that Dresser-Rand never signed any agreement with MPS. This fact, however, is not dispositive on the issue of whether there was a contract between the parties which embodied the non-solicitation clause. In North Carolina, "the parties' failure to execute a written contract does not preclude the creation of an enforceable agreement." Walker v. Goodson Farms, Inc., 369 S.E.2d 122, 127 (N.C. App. 1988). Acceptance of an offer by a course of conduct is valid and effective even in the absence of a signed agreement. Snyder v. Freeman, 266 S.E.2d 593, 602 (N.C. 1980).

MPS argues that Dresser-Rand's course of conduct demonstrated its agreement to the non-solicitation clause. We disagree. While it is true that MPS had indicated during the initial negotiations that it was unwilling to provide labor unless Dresser-Rand agreed to the clause, the simple fact remains that Dresser-Rand never accepted that ultimatum. At the very outset, Dresser-Rand wrote to MPS expressing its rejection of the non-solicitation agreement, stating, "Although it is not our intention to employ any of MPS's active employees, we do have a problem with signing your contract with regard to[the non-solicitation clause]." This same resistance continued throughout the parties' business relationship. Dresser-Rand never varied from its refusal to acquiesce to MPS's terms, and never during its five-year relationship with MPS did Dresser-Rand sign any of the contracts including the clause. Under such circumstances, Dresser-Rand's course of conduct cannot be interpreted to demonstrate the sort of "meeting of the minds" sufficient to support a contract. See Richardson v. Greensboro Warehouse & Storage Co., 26 S.E.2d 897, 898 (N.C. 1943).

To the contrary, the facts reveal that Dresser-Rand unequivocally rejected the non-solicitation clause. Indeed, as the district court observed, MPS signified through its course of conduct that it was willing to supply labor to Dresser-Rand despite Dresser-Rand's consistent rejection of any non-solicitation agreement. In effect, MPS

4

accepted Dresser-Rand's counteroffer, which plainly eliminated the non-solicitation clause.

Our conclusion is consistent with North Carolina's general suspicion of direct contractual restraints on employee mobility. State law, for example, requires employment contracts embodying non-competition clauses to be in writing. N.C.G.S. § 75-4. Furthermore, North Carolina case law sets forth strict requirements on contracts which restrain the business activities of former employees. United Laboratories, Inc. v. Kuykendall, 361 S.E.2d 292, 297 (N.C. App. 1987). While the non-solicitation clause in this case would not have directly restricted employee mobility, it certainly would have had that secondary effect. Indeed, MPS's avowed purpose in demanding the clause was to prevent MPS millwrights from leaving the company in order to work for MPS customers. In light of North Carolina's tight restrictions on contracts which directly limit employee mobility, we should be reluctant to find an agreement which accomplishes the same effect indirectly. Such caution is particularly appropriate because the employees are not even parties to the contract which restricts their employment options.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

HAMILTON, Circuit Judge, dissenting:

Because there is a genuine issue of material fact regarding whether the agreement between the parties embodied the non-solicitation clause, I respectfully dissent.

On the question of whether the parties' agreement embodied the non-solicitation clause, the evidence in the record yields two equally plausible conclusions. The first is that espoused by the majority opinion--that Dresser-Rand never assented to the non-solicitation clause and/or MPS accepted Dresser-Rand's counter-offer to exclude

5

the non-solicitation clause from the agreement. The second is that Dresser-Rand accepted MPS's offer which included the non-solicitation clause.

The majority opinion adequately summarizes the evidence in support of the former conclusion. However, the majority opinion ignores the equally compelling evidence that supports the latter conclusion. Following Dresser-Rand's March 26 letter, MPS unequivocally told Dresser-Rand that it would not send any employees to Dresser-Rand unless Dresser-Rand agreed to include the non-solicitation clause in the agreement. Thereafter, Dresser-Rand accepted the services of MPS employees pursuant to MPS's written terms when those terms unquestionably included the non-solicitation clause. From this evidence, a reasonable jury could quite properly conclude that the MPS/Dresser-Rand agreement contained the non-solicitation clause by way of Dresser-Rand's acceptance of MPS's offer.

Our job here is not to pick between these equally plausible conclusions in determining the question of mutual assent. Put another way, it is not up to us to determine which party actually "fired the last shot" and consequently, which party "accepted" the other party's offer. That is why we have juries, and the question of mutual assent on these facts should not be resolved on summary judgment. See Snyder v. Freeman, 266 S.E.2d 593, 602 (N.C. 1980) ("Whether mutual assent is established and whether a contract was intended between the parties are questions for the trier of fact.").

In sum, there is a genuine issue of fact in this case which makes summary judgment at this juncture inappropriate.* Accordingly, I

_____

*Additionally, I do not quarrel with the proposition that North Carolina has a "general suspicion of direct contractual restraints on employee mobility." See ante at 7. However, such contractual restraints on the labor market (such as the non-solicitation clause here) are impermissible only when the restraints imposed are "unreasonable." See Kadis v. Britt, 29 S.E.2d 543, 545 (N.C. 1944). In North Carolina, the party seeking enforcement of this type of contract clause has the burden of proving that, among other things, the restriction is reasonable as to both time and territory. See Hartman v. W.H. Odell & Assoc., Inc., 450 S.E.2d 912, 916 (N.C. Ct. App. 1994), review denied, 454 S.E.2d 251 (N.C. 1995).

6

would vacate the district court's grant of summary judgment to Dresser-Rand and remand for further proceedings, including the consideration of Dresser-Rand's other arguments in favor of summary judgment.

_____

Because the district court never evaluated whether MPS's non-solicitation clause was reasonable as to both time and territory, I believe it is inappropriate to conclude at this juncture that we are "reluctant to find an agreement which" "directly limit[s] employee mobility." See ante at 7.

7