Roger F. FRANCIS, Plaintiff,

v.

**POWER PLANT MAINTENANCE, INC.; Duke Power Company, Defendants.**

No. CIV.1:02 CV 00436.

United States District Court, M.D. North Carolina.

May 22, 2003.

Romallus O. Murphy, Greensboro, NC, for plaintiff.

David A. Irvin, Alison Raney Bost, Womble Carlyle Sandridge & Rice, Winston-Salem, NC, for Power Plant Maintenance, Inc., defendant.

John J. Doyle, Jr., Constangy Brooks and Smith, LLC, Winston-Salem, NC, for Duke Power Co., defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Roger F. Francis ("Plaintiff") filed this lawsuit on June 4, 2002, against his former employer Power Plant Maintenance, Inc. ("PPM"), and Duke Power Company ("Duke Power") (collectively "Defendants"). Plaintiff asserted that Defendants discriminated against him because of his race, national origin, and "presumed" religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.;* that Defendants discriminated against him because of his race and national origin in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; and that Duke Power tortiously interfered with his employment contract with PPM. Defendants filed separate motions for summary judgment with this court. In response, Plaintiff abandoned his claims against Defendants under Title VII and Section 1981. Accordingly, this court must address only Plaintiff's claim against Duke Power for tortious interference with contract.

## JURISDICTION

A district court has discretion on whether to exercise supplemental jurisdiction over state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). It may exercise this discretion through supplemental jurisdiction pursuant to 28 U.S.C. § 1367 when there is a federal basis for jurisdiction. *Semple v. City of Moundsville,* 195 F.3d 708, 714 (4th Cir.1999). Here, however, the only federal claims asserted against Defendants have been abandoned and waived by Plaintiff.

When considering whether to exercise supplemental jurisdiction over state law claims, a district court may consider factors that include " 'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy' ". *Semple,* 195 F.3d at 714 (quoting *Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir. 1995)). In this case, Plaintiff decided to abandon his federal claims only after full discovery and briefing by all parties on the motions for summary judgment. Considering the time and effort expended on this case by the parties and this court and in fairness to the parties, this court will exercise supplemental jurisdiction over Plaintiff's state law claim of tortious interference with contract.

## FACTS

Duke Power is an electrical utility servicing many regions in North Carolina and South Carolina, including the Piedmont Triad area. In August 2001, Duke Power contracted with PPM to provide meter reading services in certain North Carolina locations. Under the Field Services Agreement between Duke Power and PPM (the "Agreement"), PPM employees worked as meter readers at Duke Power locations that were covered by the Agreement. Generally, PPM was responsible for hiring meter readers and assigning them to particular Duke Power locations. Under the Agreement, Duke Power reserved the right to direct PPM to remove any PPM employee from Duke Power's premises.

In 2001, Duke Power operated a facility located at 2500 Fairfax Road in Greensboro, North Carolina, known as the Fairfax Facility. The main operations center at the Fairfax Facility housed, among other things, the Facility's office area, a meeting area for Duke Power employees, and a

separate room that was designated as the PPM meeting room. Duke Power also operated an area garage at the Fairfax Facility, which was staffed by Duke Power employees. The Fairfax area garage provided fleet services to the Fairfax Facility as well as Duke Power's facilities in other locations. In addition, the Fairfax garage maintained and repaired the vehicles that were used by PPM meter readers who were assigned to those Duke Power facilities.

Plaintiff was hired by PPM as a meter reader and began his employment on July 28, 2001. After two weeks of on-the-job training by PPM, Plaintiff began performing his regular job duties of reading Duke Power customers' electrical meters and delivering notices to Duke Power customers located on routes that were assigned by PPM on a daily basis. At the time he was hired, Plaintiff worked out of the Fairfax Facility and was paid $8.30 per hour. Plaintiff lived approximately eight miles from the Fairfax Facility and his drive to and from work took ten to fifteen minutes.

In late September 2001, Duke Power received a complaint from Greylin Brummitt, a Duke Power employee who worked as a mechanic in the Fairfax area garage. Brummitt reported that an unidentified PPM meter reader of Middle Eastern descent had made inflammatory anti-American remarks at the Fairfax Facility. This PPM employee was later identified as Plaintiff. While Duke Power conducted an investigation into the complaint, word about the Plaintiff's remarks already had spread throughout the Fairfax Facility.

Due to the disruption caused by the reports of Plaintiff's remarks and the results of its own investigation, Duke Power contacted PPM's interim region manager Karen Neilson and PPM's Director of the Metering Division Paul Glasco in early October to take steps toward identifying Plaintiff and removing him from Duke Power locations. Soon thereafter, Glasco conducted an investigation on behalf of PPM. As part of this investigation, Glasco interviewed Plaintiff about his conversation with the Duke Power employee. After interviewing Plaintiff and gathering the facts regarding the Duke Power employee's complaint, Glasco determined that the situation was the result of a misunderstanding and that the Duke Power employee had taken Plaintiff's comments out of context.

Upon completion of its investigation, Duke Power came to a different conclusion. It concluded that Plaintiff's comments had created a hostile work environment for Duke Power's employees of American national origin. In light of Glasco's report, however, Duke Power decided to re-interview Brummitt to confirm that he had correctly understood Plaintiff's remarks. Concluding that there was no misunderstanding, Duke Power contacted PPM and requested that Plaintiff not be permitted to work under any Duke Power contract. This would have required PPM to terminate Plaintiff because its employees at the Fairfax Facility provided meter reading services only to Duke Power. After negotiations between Glasco and Duke Power, however, Duke Power decided to allow PPM to reassign Plaintiff to another Duke Power facility that was not serviced by the Fairfax garage operation.

In the meantime, PPM had taken Plaintiff out-of-work, with pay, while Duke Power and PPM determined how the situation would be handled. Plaintiff remained on paid leave from October 3 until he resumed working on October 11, 2001. Throughout Plaintiff's leave, Glasco called daily to give Plaintiff an update on events.

After negotiations between Glasco and Duke Power were concluded, Glasco called Plaintiff to tell him he would be reassigned

to another Duke Power facility. Glasco told Plaintiff that he would not be allowed to work at the Fairfax Facility, but that he could choose among the Duke Power facilities in Winston–Salem, Rural Hall, or Lewisville. Given this choice, Plaintiff agreed to be transferred to Winston–Salem because he knew the area and it was closer in proximity to Greensboro, where he already lived.

Plaintiff began working at the Winston–Salem facility on October 11, 2001. His job title and responsibilities as a meter reader remained the same. He also retained the same hourly wage rate, and he earned more overtime pay after his move to Winston–Salem.

According to Plaintiff, however, his employment with PPM did not go well after PPM reassigned him to the Winston–Salem facility. His primary complaint was that his daily commute had increased from an eight-mile, ten-to-fifteen minute commute each way to about a thirty-mile, forty-five-to-sixty minute commute each way. Plaintiff also testified that he had various other problems while working in PPM's Winston–Salem office. In late December 2001, Plaintiff walked off the job at PPM without notifying PPM managers. He never went back to work at PPM.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove his case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

▪ Plaintiff alleges that Duke Power tortiously interfered with his employment contract with PPM. In North Carolina, the claim of tortious interference with contract is designed to remedy a defendant's deliberate interference with the performance of a contract existing between a plaintiff and a third party. *Farris v. Tubular Textile*, 2002 WL 1150724 (M.D.N.C. May 24, 2002). To prevail on such a claim, Plaintiff must prove the following elements: (1) a valid contract existed between Plaintiff and PPM; (2) Duke Power knew of the contract; (3) Duke Power intentionally induced PPM's nonperformance of the contract; (4) without justification; (5) resulting in actual damage to Plaintiff. *See Swaim v. Westchester Acad.*, 208 F.Supp.2d 579, 588 (M.D.N.C.2002). For the purposes of this motion, it is undisputed that Plaintiff had an at-will employment contract with PPM, that Duke Power knew about that contract, and that Duke Power told PPM to remove Plaintiff from the Fairfax Facility and other Duke Power sites serviced by the Fairfax area garage.

■ Duke Power claims that Plaintiff has provided no evidence that it acted "without justification" in requesting Plaintiff's transfer from the Fairfax Facility. First, Duke Power contends that it had the "absolute right" under its contract with PPM to remove any person that was not acceptable to it. Plaintiff disputes this and argues that if Duke Power has an "absolute right" to say who could work on its property it would amount to an "absolute right to ignore all civil rights, constitutional and statutory rights of any citizen." (Pl.'s Resp. to Def.'s Summ. J. Mot. at 4.)

In an earlier case involving Duke Power, the North Carolina Court of Appeals granted Defendant Duke Power's summary judgment motion on the plaintiff's tortious interference with contract claim while specifically addressing this issue. *See Snyder v. Duke Power Co.*, 15 N.C.App. 211, 189 S.E.2d 572 (1972). In *Snyder*, the plaintiff was employed by a company that had contracted with Duke Power for power line construction and maintenance work. Due to an alleged incident, Duke Power directed the plaintiff's employer not to allow him to work on its premises and the plaintiff lost his job as a result. In holding for Duke Power, the court rested its decision on the general principle:

> 'Absolute rights, including primarily rights incident to the ownership of property, rights growing out of contractual relations, and the right to enter or refuse to enter into contractual relations, may be exercised without liability for interference without reference to one's motive as to any injury directly resulting therefrom. This is in contrast to the exercise of common and qualified rights which may be exercised only where there is justification therefor. In other words, acts performed with such an intent or purpose as to constitute legal malice and without justification, which

otherwise would amount to a wrongful interference with business relations, are not tortious where committed in the exercise of an absolute right.'

*Snyder*, 15 N.C.App. at 213, 189 S.E.2d at 573 (quoting 45 Am.Jur.2d, *Interference*, § 23). In the present case, it is undisputed that Duke Power reserved the right under the Agreement to direct PPM to remove any PPM employee from Duke Power's premises. Under the language of the Agreement and as an incident of its ownership, Duke Power had a right to advise PPM that Plaintiff would not be permitted to work on its property.

■ Even if this right is qualified and not absolute, however, Duke Power had a legitimate business reason for insisting that PPM remove Plaintiff from the Fairfax Facility and other Duke Power sites serviced by the Fairfax area garage. Justification of Duke Power's conduct depends upon "the circumstances surrounding the interference, [its] motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of [Duke Power] and the contractual interests of the other party." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988). Duke Power's interference is not justified "where the act is done other than as a reasonable and bona fide attempt to protect [its] interest." *Smith v. Ford Motor Co.*, 289 N.C. 71, 91, 221 S.E.2d 282, 294 (1976). If Duke Power's conduct is done for a "legitimate business purpose, [the act] is privileged." *Hooks*, 322 N.C. at 221, 367 S.E.2d at 650 (citation omitted).

The Plaintiff has established no facts that suggest Duke Power has acted out of anything other than a legitimate concern with maintaining a professional and collegial atmosphere among the employees at the Fairfax Facility. Furthermore, there

is no evidence that Duke Power harbored any specific intent to harm Plaintiff or his employment prospects with PPM. *See Johnson v. Gray,* 263 N.C. 507, 509, 139 S.E.2d 551, 553 (1965) (holding that tortious interference with contract is actionable if a defendant maliciously procures a breach of contract or prevents the making of a contract with a design to injure the plaintiff or gain some advantage at his expense). Although the specific statements attributed to Plaintiff in the conversation are disputed, it is apparent that Plaintiff's statements to Brummitt were widely viewed as anti-American and created a disruption in the Fairfax Facility. As the owner and operator of the facility, Duke Power had the right to investigate and correct the situation. Duke Power's investigations found that Plaintiff had made the disruptive statements. Whether correct or not, Duke Power's investigatory results and its concern about the disruption in its Fairfax Facility are legitimate business reasons for requesting that PPM remove Plaintiff.

Aside from his own conclusory allegations that Duke Power requested his removal because of his race, national origin, or perceived religion, Plaintiff has offered no evidence questioning the legitimacy of Duke Power's stated reasons or motivations. In fact, it is undisputed that Duke Power allowed PPM to reassign Plaintiff to Duke Power's Winston–Salem facility, allowing Plaintiff to maintain his job status and position while addressing Duke Power's concerns about the workforce disruption at the Fairfax Facility. If Duke Power's intent was to harm Plaintiff, it could have declined PPM's request and insisted that Plaintiff be removed from *all* Duke Power premises.

 Duke Power also contends that Plaintiff has not proven that its actions resulted in any actual damage to Plaintiff.

Actual damage is required to state a claim for tortious interference with contract. *Polygenex Int'l v. Polyzen,* 133 N.C.App. 245, 252, 515 S.E.2d 457, 462 (1999). The North Carolina Court of Appeals has most recently held that "actual damages" in tortious interference with contract cases involve "monetary damages or actual pecuniary harm." *Burgess v. Busby,* 142 N.C.App. 393, 403, 544 S.E.2d 4, 10 (2001) (citation omitted). For example, the actual damage element has been satisfied when a defendant's actions caused a plaintiff to lose his job resulting in monetary damages. *See, e.g., Barker v. Kimberly–Clark Corp.,* 136 N.C.App. 455, 462, 524 S.E.2d 821, 826 (2000).

Plaintiff argues, however, that "actual damages" means " 'some actual loss, hurt or harm, resulting from the illegal invasion of a legal right.' " (*See* Pl.'s Resp. to Def.'s Summ. J. Mot. at 5 (quoting *Hawkins v. Hawkins,* 101 N.C.App. 529, 532–33, 400 S.E.2d 472, 474–75 (1991)).) *Burgess* does not contradict this statement, but simply clarifies this definition in the specific context of a claim for tortious interference with contract. In fact, the tortious interference with contract case cited by *Hawkins* purporting to support its definition of "actual damages" concerned monetary damages due to breach of a non-competition agreement. *See United Labs. v. Kuykendall,* 87 N.C.App. 296, 361 S.E.2d 292 (1987), *aff'd in part, rev'd in part,* 322 N.C. 643, 370 S.E.2d 375 (1988).

In the present case, Plaintiff has presented no evidence of actual monetary damages. The evidence indicates that Plaintiff retained his same job title, job duties, and hourly pay rate upon his transfer to Winston–Salem. In fact, Plaintiff admitted that after the transfer he actually worked more overtime and therefore earned *more* than he did at the Fairfax Facility. Furthermore, other than his in-

creased commute, Plaintiff has offered no evidence to support his claim that his "cost of working" had increased. (Pl.'s Resp. to Def.'s Summ. J. Mot. at 5.)

## CONCLUSION

Plaintiff has failed to prove at least two of the five required elements of tortious interference with contract. For the foregoing reasons, the court will grant Duke Power's motion for summary judgment. The court will also grant PPM's motion for summary judgment because the Plaintiff has abandoned all of his claims against PPM.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant Duke Power Company's motion for summary judgment [Doc. # 17] is **GRANTED**, and this action is **DISMISSED** with prejudice as to Defendant Duke Power Company.

IT IS FURTHER ORDERED AND ADJUDGED that Defendant Power Plant Maintenance Inc.'s motion for summary judgment [Doc. # 20] is **GRANTED**, and this action is **DISMISSED** with prejudice as to Defendant Power Plant Maintenance, Inc.